J. B. Evans, *a Justice of the Peace of Soldier Township, Shawnee County*, v. Chester Thomas, Jr., *Sheriff of Shawnee County*.

1. Subject-Matter *of Action; Interest.* The question whether the plaintiff has sufficient interest in the subject-matter of the action to maintain the action, stated and commented on, but not decided.

2. Mandamus—*Facts Stated in Return.* In an action of mandamus, where an alternative writ is issued, the defendant may, in his return to the alternative writ, set forth facts which show that he is under no obligation to perform the acts required to be performed by the alternative writ, and may also state in his return that nevertheless he has performed such acts.

3. Peremptory Writ, *When Refused; Costs.* Where separate criminal proceedings are commenced before two justices of the peace against the same person for the purpose of subjecting him to a preliminary examination for the same offense, and the sheriff of the county has the custody of the accused in both cases, and, under the advice of the county attorney, continues to hold the accused under the proceedings instituted before one of the justices, to wit, Justice H., and refuses to return the accused to the other justice, to wit, Justice E., and the county attorney informs both the sheriff and Justice E. that he wishes to dismiss the proceedings instituted before Justice E., and under the circumstances of the case it would seem that justice would be better subserved by permitting the sheriff to hold the accused under the proceedings instituted before Justice H., in preference to holding him under the proceedings instituted before Justice E., and Justice E. commences an action of mandamus in the supreme court against the sheriff to compel him to return the accused to Justice E., *held*, that the court, exercising a sound judicial discretion, will not award a peremptory writ of mandamus in such case, although the proceedings before Justice E. may have been instituted a few hours earlier than the proceedings before Justice H.; *and further held*, that Justice E. must pay the costs of the action of mandamus.

*Original Proceedings in Mandamus.*

ACTION brought in this court March 24, 1884, by *J. B. Evans*, a justice of the peace of Soldier township, in Shawnee county, against *Chester Thomas, Jr.*, sheriff of said county, to compel the defendant to deliver the body and custody of one Isaiah McClary to the plaintiff, at his office in said township. The facts are stated in the opinion, filed at the October, 1884, session of the court.

*J. H. Collier, Overmeyer & Carey, E. N. Gunn,* and *F. S. Stumbaugh,* for plaintiff.

*A. H. Vance,* county attorney, for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of mandamus, commenced originally in this court by J. B. Evans, a justice of the peace of Soldier township, Shawnee county, Kansas, against Chester Thomas, jr., sheriff of said county, to compel the defendant to deliver the body and custody of one Isaiah McClary to the plaintiff at his office in said township. At the commencement of the action, an alternative writ of mandamus was issued by the court, to which writ the defendant has made return and answer, stating all the facts of the case, as he claims them to be, and stating them as a full and complete answer and defense to the alternative writ, and also stating that he has performed the acts required to be performed by the writ, and asking that judgment should be rendered in his favor, and against the plaintiff, for a dismissal of the writ, and for costs. Upon these pleadings — the writ and the return — the plaintiff moves the court for a judgment in his favor; and upon this motion the case is now submitted to this court.

The facts of the case appear to be substantially as follows: On the night of March 4, 1884, Isaiah McClary, with a revolver, shot two men, to wit, George Blackwell and Peter Bledsoe. Blackwell immediately died, but Bledsoe lived until the next day about noon, when he died. Immediately after

the shooting of these two men, and on March 5, 1884, McClary, with his wife, went before the said J. B. Evans, justice of the peace, and caused two complaints to be drawn, one charging McClary with killing and murdering George Blackwell, and the other charging him with killing and murdering Peter Bledsoe, and the wife, Priscilla McClary, signed and swore to both of these complaints; and the justice immediately issued warrants for the arrest of McClary, and the warrants were placed in the hands of J. A. Hickey, deputy sheriff under Chester Thomas, jr., the sheriff of said county, and Hickey took charge of McClary upon said warrants. An order was then made by the justice, upon motion of McClary, continuing both of these cases until March 18, 1884. On the morning of March 5, 1884, while the foregoing proceedings were going on before Justice Evans, Dr. J. B. Hibben, the coroner of Shawnee county, with a jury, held an inquest upon the body of George Blackwell, and the jury found that Blackwell had been feloniously killed by McClary, and the coroner issued his warrant to the sheriff of Shawnee county, commanding him to arrest McClary and forthwith take him before W. R. Hazen, a justice of the peace of the city of Topeka, Shawnee county, to answer to the charge of murder in the first degree. On the next day, and after Peter Bledsoe had died, the coroner, with another jury, held a like inquest upon the body of Bledsoe, with a like result as that held upon the body of Blackwell, and a further warrant was issued by the coroner, commanding the sheriff to arrest McClary and take him before said W. R. Hazen, justice of the peace, to answer to the charge of killing and murdering Bledsoe. The sheriff immediately served these warrants, and in pursuance thereof took McClary before Justice Hazen, where the hearing, on motion of McClary, was continued until March 24, 1884, and McClary was remanded to the custody of the sheriff by Justice Hazen, and a mittimus was duly issued by the justice in each case, commanding the sheriff to commit McClary to the jail of Shawnee county until the day fixed for hearing; and from that time on the sheriff

held McClary in custody under the warrants of commitment issued by Justice Hazen.

On March 15, 1884, the county attorney, A. H. Vance, sent a note to Justice Evans, requesting him to dismiss the proceedings had before him against McClary, upon the grounds that the cases had been taken before Justice Hazen on the warrants of the coroner, as before stated; that no proper complaints had been filed before Justice Evans; and that Evans was a necessary witness in the cases. Evans, however, refused to dismiss the proceedings before him, but demanded that the sheriff should deliver to E. A. Cullum, a constable of his (Evans's) court, the custody of the said McClary. The sheriff consulted the county attorney with respect to this matter, and the county attorney told the sheriff that he, the county attorney, had dismissed the proceedings commenced before Justice Evans, and that the sheriff should retain the custody of McClary under the warrants of commitment issued by Justice Hazen; and the sheriff took the advice of the county attorney and continued to hold the custody of McClary under the warrants issued by Justice Hazen. Afterward, and on March 24, 1884, a preliminary examination was had in these cases before Justice Hazen, and McClary was held to answer the charges made against him, and was again committed by proper orders and writs to the custody of the sheriff to await his final trial in the district court. On the same day, to wit, March 24, 1884, the plaintiff, Evans, commenced this action in this court. The defendant further states in his return to the alternative writ that, not wishing to be involved in any contest, and not having any interest in the case, he, on March 31, 1884, presented McClary to the plaintiff, Evans, at his (Evans's) office, when the cases before Evans were continued to April 7, 1884, when the defendant again presented McClary to the plaintiff, Evans, when the plaintiff, as justice of the peace, again ordered that the proceedings should be continued, and ordered that they be continued until April 23, 1884; and no effort was then made for a preliminary examination, and no effort for a preliminary examination was at any other time made, and no action of any

other kind had been taken with reference to McClary by or before Justice Evans, beyond what has already been stated, up to April 15, 1884, when the defendant made and filed in this court his answer and return to the alternative writ; and Justice Evans at no time demanded that the defendant should deliver McClary to him or at his office, but only demanded that McClary should be delivered to Constable Cullum. The defendant states in his answer some other facts supposed to cast doubt and suspicion upon the good faith of the proceedings had before Justice Evans. Upon this motion for a judgment for costs, several questions are supposed to arise:

I. The defendant claims that the plaintiff has no authority or right to maintain this action. He claims that this is not a public action, but only the private action of J. B. Evans; that the county attorney, or the attorney general only, can maintain a public action; and, considering the case as the private action of J. B. Evans only, he has not stated or shown that he has any sufficient private, personal or pecuniary interest in the subject-matter of the action to maintain the action.

II. On the other hand, the plaintiff claims that the defendant, in his return to the alternative writ, cannot make answer to both branches of the alternative mandate of the alternative writ; that he cannot set forth facts which show that he had good cause or good reasons for failing to perform the acts required to be performed by the alternative writ, and then state that nevertheless he did perform such acts; that it is not true, so far as this case is concerned, that "the defendant may set forth in his answer as many grounds of defense, counter-claim, set-off, and for relief, as he may have, whether they be such as have been heretofore denominated legal, or equitable, or both," (Civil Code, § 94, subdiv. 3;) but that he can state in his answer only that he has obeyed the first branch of the alternative mandate of the alternative writ by performing the acts required to be performed, or he must show cause why he has not done so; that he cannot state or show both that he has performed the acts, and also, for the purpose of saving costs, that he was not bound to perform them. The plaintiff claims

that, although the defendant may have ever so good a defense to the action, yet, if, having no interest in the controversy and wishing to avoid litigation, trouble, expense and costs, as in the present case, he performs the acts required by the writ, then that he cannot show his defense, but must pay all the costs of the litigation; that because he has performed the acts, acts which he was not bound to perform, but acts which the plaintiff desired that he should perform, he must be mulcted in costs which he would not be required to pay if he had utterly refused to perform the acts. Of course such a claim is not tenable.

III. The plaintiff further claims that the facts set forth by the defendant in his answer to the alternative writ constitute no defense to his, the plaintiff's, action. We think they do. Or at least we think they show that the plaintiff is not entitled to a writ of mandamus, if the court may, under the facts of the case, exercise a sound judicial discretion in awarding the writ, or not, as the justice and right of the case would require.

The proceedings before Justice Evans were instituted by McClary and his wife, and of course, as alleged in the defendant's answer, they intended that the proceedings should be carried on merely for the benefit of McClary. As before stated, the complaining witness was the wife of McClary, and neither Justice Evans nor any other court could compel her to testify against her husband. Also, when Justice Evans took jurisdiction of the case, he did not take the exclusive jurisdiction thereof; for, under the statutes, he had no right to require that the preliminary examination should take place only before himself. Section 36 of the criminal code provides, among other things, that where a complaint is made before some court or justice that a criminal offense has been committed, then, "if it shall appear that any such offense has been committed, the court or justice shall issue a warrant, naming or describing the offense charged to have been committed, and the county in which it was committed, and requiring the officer to whom it shall be directed, forthwith to take the person accused, and bring him before *some court or magistrate of the*

*county*, to be dealt with according to law." And section 37 of the criminal code reads as follows:

"SEC. 37. Such warrant may be substantially in the following form, varying the terms to suit the case: 'The State of Kansas, ——— county. The State of Kansas, to any sheriff or constable of the State of Kansas: It appearing that there are reasonable grounds for believing that A B has committed the offense of ———, in the county of ———, you are therefore commanded, forthwith, to arrest A B, and bring him before *some magistrate of the county* of ———, to be dealt with according to law.

"'C D, *Justice of the Peace for* ——— *County.*'"

There are no statutes providing otherwise, and these statutes are fully complied with where the warrant is issued by one magistrate and the accused is taken before some other magistrate, and there given a preliminary examination. Proceedings were also instituted in the present case by the coroner of the county, and in pursuance thereof McClary was taken before Justice Hazen; and the county attorney, for good reasons, preferred to carry on the proceedings before Justice Hazen, rather than to carry them on before Justice Evans. The sheriff also obtained custody of McClary, under the proceedings instituted by the coroner and carried on before Justice Hazen, and retained such custody under the advice of the county attorney; and the county attorney desired and attempted to dismiss the proceedings instituted before Justice Evans; and the proceedings instituted and carried on before Justice Hazen were certainly instituted and carried on in good faith, whether the proceedings instituted before Justice Evans were, or not. Certainly, we think the proceedings before Justice Evans ought to have been dismissed. The interests of public justice were more likely to be subserved by carrying on the proceedings before Justice Hazen than before Justice Evans, whatever may have been the wishes or desires of Justice Evans; and presuming, as we shall, that Justice Evans was acting in the best of faith.

Now, passing to the action in this court, we think that Justice Evans has no right to maintain the action as a public

officer; and if he may maintain it at all, it must be simply as a private individual, and because of some personal and pecuniary interest which he himself may have in the subject-matter of the action. Now the only personal and pecuniary interest which he can possibly have in the subject-matter of the action is the costs which may possibly accrue to him if the custody of McClary shall be awarded to him, and he be allowed to carry on a preliminary examination against McClary. But it does not appear that any costs of any consequence will be likely to accrue. None are alleged in the pleadings of the plaintiff, and none are shown. But suppose that costs will accrue to him: then are public criminal prosecutions to be instituted and carried on merely for the purpose of giving costs to officers? Surely not. Besides, writs of mandamus are not allowed to parties in any case as a mere matter of course. They are allowed only when parties have rights to be enforced, and then only when they have no other plain and adequate remedy in the ordinary course of the law; and only then when justice will be likely to be defeated or frustrated unless a writ of mandamus be allowed. Also, courts of justice may often exercise a considerable degree of discretion in allowing or refusing writs of mandamus. (*The State v. Marston*, 6 Kas. 524, 537, and cases there cited; *A. T. & S. F. Rld. Co. v. Jefferson Co.*, 12 id. 136; *Golden v. Elliott*, 13 id. 92; *The State v. Breese*, 15 id. 125; *The State v. Comm'rs of Anderson Co.*, 28 id. 70.) Courts of justice may always refuse such writs where their issuance would tend to thwart the administration of justice, instead of contributing to its promotion.

Under the facts of this case, we think a court exercising a sound judicial discretion would not be justified in granting a peremptory writ of mandamus; and for this reason we think that the plaintiff should not have instituted this action; but as he has done so, we think he should pay the costs thereof.

The motion of the plaintiff for a judgment for costs will therefore be overruled.

All the Justices concurring.