## Richmond.

SANDS, TRUSTEE, AND ANOTHER v. STAGG AND OTHERS.

January 25, 1906.

June 14, 1906.

1. MECHANIC'S LIEN—*Act of Limitations—Demurrer—Judicial Notice When Suit Brought.*—Where the record shows that a suit to enforce a mechanic's lien was brought within the time fixed by statute, that fact need not be alleged in the bill, as the court will take judicial notice of the time when the suit was instituted.

2. MECHANIC'S LIEN—*Case in Judgment—General Contractor—Sub-contractors—Notice—Payment to Builder in Property—Retention of Legal Title to Secure Advances.*—A builder contracted with the owner of a large city lot to erect thereon five houses in all respects alike, according to agreed plans and specifications, and covering the entire frontage. In consideration thereof the owner agreed to convey three-fifths of the lot, with three of the buildings, to be erected thereon at a stipulated price, and to pay an agreed sum. The builder then contracted with material men and contractors to furnish certain materials and do certain portions of the work. During the progress of the work, the owner of the lot advanced to the builder $3,000 to enable him to complete the work, which it was agreed the builder should repay before he became entitled to a deed. The builder conveyed one of the lots to A, who had furnished a large quantity of supplies for, and done a large amount of the work upon, the five houses. The builder then conveyed the two other houses and lots to a trustee to secure certain enumerated debts. Within the time prescribed by law said contractors and material men docketed mechanics' liens on all five of the houses, and the lots upon which they were situated, but gave no notice of the amount and character of their claims to the original owner of the large lot aforesaid. The owner of the lot made a deed conveying three-fifths of the original lot (or three of the smaller

lots) to the builder, but delivered it in escrow until the builder should pay him the sum of $3,000.

*Held*: 1. The material men and contractors, although they contracted only with the builder, are general contractors within the meaning of sections 2475 and 2476 of the Code, and it was not necessary for them to give notice to the owner of the original lot of their claims, as provided by section 2477 of the Code.

2. A could acquire only such title to the lot conveyed to him as his grantor, the builder, could convey. Hence, as between A and the original owner, the latter has priority to the extent of $3,000.

*On Rehearing*, June 14, 1906.

3. APPEAL AND ERROR—*Errors Assigned in Reply Brief.*—This court will not, as a rule, consider errors assigned for the first time in the reply brief of appellant, or plaintiff in error, as such assignment is not a compliance with the statute on the subject, and is not fair to the appellee, or defendant in error.

4. VENDOR AND PURCHASER—*Payment of Purchase Money—Mechanic's Lien—Act of Limitations.*—Where a vendor sells a portion of a lot to a vendee in consideration that the vendee will erect a house on the residue of the lot for the vendor, and the vendor also lends the vendee a certain sum of money to enable him to build on the two lots under an agreement that the sum so loaned shall be returned before the vendor is obliged to make any conveyance, the vendee must relieve the vendor's lot from all mechanics' liens and also repay the sum loaned before he is entitled to a deed. So far as affects the rights of the vendor, a purchaser from the vendee stands on no higher footing than the vendee, and if mechanics' liens are perfected against the property of the vendor and the vendee, the vendor may insist that the property of the vendee shall be subjected, including a portion of it sold by him to another, although such other is not made a party to the suit to enforce the mechanic's lien until after the right to bring such suit is barred as to him, for the vendor is not obliged to convey to the vendee or to anyone else until his property is relieved of the mechanic's lien, and the sum advanced by him has been repaid.

Appeal from a decree of the Chancery Court of the city of Richmond in three suits heard together for the enforcement

of mechanic's liens. In each of the three suits Conway R. Sands, trustee, and W. J. Anderson were defendants. From an adverse decree they appeal.

*Affirmed.*

The opinion states the case.

*C. R. Sands, A. W. Patterson* and *Geo. Bryan,* for the appellants.

*Harvey Willson, Sol. Cutchins* and *Leake & Carter,* for the appellees.

Buchanan, J., delivered the opinion of the court.

This is an appeal from a decree rendered in three chancery causes heard together, the object of all of them being to subject a lot and five houses thereon to the payment of mechanics' and builders' liens asserted by the complainants for materials furnished and work done in the erection of the houses.

The first error assigned is to the action of the court in overruling the demurrer to the bills filed in the several causes.

Two grounds of demurrer are relied on here. The first is that the bills fail to allege that the suits were brought within six months from the time the whole amount covered by the liens became payable. (Code of 1887, sec. 2481.)

The bills do not allege when the suits were instituted, but they do allege when the amounts asserted as liens upon the property became due and payable, and the date of the process shows that the suits were brought within the time required by the statute. Where the record shows at the time the bill is demurred to that the suit was instiuted within the period fixed

by the statute, there is no good reason for requiring the bill to allege that fact, since the court will take judicial notice of when the suit was instituted, as well as of all other proceedings in the cause. 1 Elliott on Ev., sec. 57; Boisot on Mechanics' Liens, sec. 554.

The other ground of demurrer is that the bills fail to allege that the complainants gave notice of the amount and character of their claims to Mahony, the owner of the land, as required by section 2477 of the Code.

The bills do not allege such notice; but the contention of the complainants, appellees here, is that they were not sub-contractors, and therefore no such notice was necessary. The decision of this question depends upon the construction of the contract between Mahony and Ryan, under which the buildings on the lot were erected. That contract is as follows:

"This contract, made this 23d day of August, 1894, by and between G. G. Ryan, of the city of Richmond, and State of Virginia, party of the first part, and Daniel H. Mahony, of the second part, and of Philadelphia, Pa.

"To-wit: That for and in consideration of the sum of $4,360.00 (four thousand three hundred and sixty dollars) each, the said party of the first part agrees to furnish all material, labor and erect and complete for the said party of the second part (2) two of the (2) two story and mansard brick tenements, according to plans and specifications made by the said party of the first part and approved and accepted by the said party of the second part. And to be built on Floyd avenue, near Morris street.

"The said party of the first part agrees to allow the said party of the second part $100.00 per front for 63 feet 0 inches adjacent to the houses already described and upon which the said party of the first part proposes to build (3) three houses— duplicating those aforesaid described, making a row of (5) five tenements.

Cost of building the above two (2) tenements...... $8,720 00

Cost of 63 feet of land at $100 per foot.......... 6,300 00

To balance in favor of the said party of the first part. $2,420 00

"First Part,    G. C. RYAN.          (Seal).

"Second Part,    DAN'L H. MAHONY.    (Seal)."

The agreement between the parties contemplated the erection of a row of five houses, duplicates of each other, on the lot of Mahony, built according to plans and specifications furnished by Ryan and approved by Mahony. Two of the houses (which two the contract does not designate) were to be built for Mahony. For furnishing the material and doing the work in erecting and completing these two houses, Mahony was to convey to Ryan the residue of the lot on which the other three houses were erected, at the price of $6,300.00, and in addition, pay him $2,420.00.

While it may be difficult to define the precise legal relation between Mahony and Ryan, it is clear, we think, that Ryan was authorized and empowered to erect the row of five houses on Mahony's lot. Mahony having authorized that work to be done by Ryan on his lot, the men who furnished the material and did the work in carrying out the scheme agreed to and authorized by Mahony ought not to be compelled to look alone to Ryan's interest in the property for the payment of their claims. The fact that their contracts for material and labor were made alone with Ryan ought to make no difference when he was, in fact, carrying out the scheme entered into between him and Mahony, and Mahony's interest in the property, as well as Ryan's, ought to be liable for their claims. See Boisot on Mechanics' Liens, secs. 300 to 305; Phillips on Mechanics'

Liens' secs. 69 to 72a; 2 Jones on Liens (3d ed.), sec. 1487; *Paulson* v. *Manske* (Ill.), 18 N. E. 275, 9 Am. St. Rep. 532; *Henderson* v. *Connelly,* 123 Ill. 98, 14 N. E. 1, 5 Am. St. Rep. 490; *Hill* v. *Hall,* 40 Minn. 441, 42 N. W. 294; *Oleary* v. *Roe,* 45 Mo. App. 567; *Hilton* v. *Merrill,* 106 Mass. 528.

We are of opinion, therefore, though the question is not entirely free from difficulty, that the complainants should be held to be general contractors within the meaning of sections 2475 and 2476 of the Code, and that it was not necessary for them to give Mahony notice of their claims, as provided by sections 2477 of the Code.

The commisioner, who was directed to ascertain and report the liens on the property sought to be subjected, and their priorities, reported, among other things, that there were no liens upon the two houses which Mahony had selected and retained under his agreement with Ryan; that the first lien upon the three houses which Mahony had conveyed to Ryan by deed, delivered in escrow, was a debt due Mahony from Ryan for money which Mahony had, in effect, furnished to enable Ryan to complete the erection of the houses; that the second liens were the claims of the complainants and another mechanic's lien claimant, who had come into the cause by petition to assert his claim; and that Anderson, one of the appellants, to whom Ryan had conveyed one of the three houses, took it subject to those liens.

The mechanic's lien claimants did not except to the commissioner's report. The appellants excepted to it, but their exceptions were overruled by the court.

One of their exceptions was that the commissioner erred in reporting in favor of complainant Stagg's claim, instead of rejecting it entirely. The action of the court in overruling that exception is assigned as error.

Without discussing the facts upon which the commissioner based his finding and the depositions taken subsequent to the filing of the report we are of opinion that Stagg's claim is a valid one, and that his lien had been perfected in the manner required by the statute.

The appellants also excepted to the report of the commissioner because he reported the claim of Daniel H. Mahony for $3,000 as the first lien upon the three houses of Ryan. The action of the court in overruling that exception is assigned as error.

While Ryan was engaged in building the five houses it became necessary for him to borrow money to complete them. To enable him to do this, John Mahony, who lived in Richmond, at the request and as the agent of Daniel Mahony, who lived in Philadelphia, endorsed Ryan's note for $3,000, upon which he borrowed that sum, which was used in completing the houses, with the understanding that it was to be paid by Ryan before he would become entitled to a deed from Daniel Mahony, his vendor. Ryan having failed to pay it, and becoming insolvent, John Mahony paid it as the agent of his brother, Daniel Mahony, and the commissioner reported it as a debt due the latter.

Under the agreement between Daniel Mahony and himself Ryan had no right to a conveyance of the legal title to that portion of the lot on which his three houses were built until he had complied with the terms of the agreement of August 23, 1894, and to secure the performance of which Mahony had retained such title. Anderson, to whom Ryan had conveyed one of his three houses, only acquired such interest in the property conveyed as Ryan had; and not having acquired by his deed the legal title, Anderson took the property, subject to all the equities between Ryan and Mahony growing out of the agree-

ment betwen them, one of which was the right of Mahony to have the $3,000, furnished to complete the houses, repaid before he could be required to part with the legal title. The commissioner was, therefore, clearly right in reporting Mahony's claim of $3,000 as having priority over Anderson's purchase from Ryan. *Lewis* v. *Caperton,* 8 Gratt. 148, 163-'4; *Yancey* v. *Mauck,* 15 Gratt. 300, 306-'8; 2 Min. Inst. (4th ed.), 220; 3 Pom. Eq. Jur., sec. 1260.

The remaining assignment of error is to the action of the court in overruling the exception of Sands, trustee, to the commisioner's report, because he did not report that the deed of trust of May 9, 1895, was a prior lien on all the property embraced in that deed.

The grounds upon which it is claimed that the deed of trust ought to have been reported as the first lien upon the property embraced in it are that the bills of the complainants are demurrable; that the liens asserted by those doing work and furnishing material were invalid; and that Mahony had no lien for the $3,000 debt asserted by him.

As each of these grounds of objection to the court's action has been considered in discussing the other assignments of error, and decided against the contention of the appellants, it follows that this assignment of error must also be overruled.

We are of opinion, therefore, that there is no error in the decree appealed from to the prejudice of the appellants, and that it should be affirmed.

UPON PETITION TO REHEAR, JUNE 14, 1906.

BUCHANAN, J., delivered the opinion of the court.

The petition to rehear the decree entered in this case at the January term, 1906, of the court, which was filed by W. J. Anderson alone, states that "we accept for the purposes of this petition all that is stated in the opinion, but we submit that nowhere does it take into consideration the fact appearing from the record, that as to Anderson these suits were not brought for more than nine months after the several claims were alleged to have become due. Anderson was not originally a party to these causes. Plaintiffs brought him in by amending their bills,. but not within the prescribed time. Now, as we shall presently show, Anderson was a necessary party and had to be sued within the statutory period or go forever unmolested. When these suits were brought Anderson was in possession of the premises (No. 1206 Floyd Avenue) and had been for nearly four months previous thereto, when, on April 15, 1905, he obtained his deed from Ryan."

It is true, as stated in the petition, that in deciding the case upon the original hearing no notice was taken of the fact that Anderson was not made a party to the suit of *Stagg* v. *Sands,. Trustee, &c.,* and the suits heard therewith, until more than six months after the amounts claimed by the complainants (mechanic's lienors) had become due. That fact was not considered at that time, although argued, because no assignment of error, based upon it, was made in the petition for appeal, nor was it made until the appellants' reply brief was filed.

Where an assignment of error is made for the first time in the reply brief of the appellant, or plaintiff in error, the court will not, as a rule, which has been announced in several cases, consider such assignment of error, because it is not a compliance with the statute on the subject (Code 1904, sec. 3464) and is not fair to the appellee or defendant in error. *Orr* v. *Pennington,* 93 Va. 268, 24 S. E. 928; *N. & W. Ry. Co.* v. *Perrow,* 101

Va. 345, 350, 43 S. E. 614; *Hawpe* v. *Bumgardner,* 103 Va. 91, 98, 48 S. E. 554; *Newport News, &c., Ry. & Elec. Co.* v. *Bickford, ante,* p. 182, 52 S. E. 1011, decided at January term, 1906.

Conceding for the purpose of this case, as is argued, that under the statute (Va. Code, 1904, sec. 2481) the Chancery Court had no jurisdiction to enforce the mechanic's liens of the complainants against the house and lot of Anderson unless he was made a party to their bills within the time prescribed by the statute, and that that question ought to have been considered by this court because jurisdictional, we do not think that a consideration and decision of that question could have resulted in a reversal of the decree of the chancery court appealed from, under the facts disclosed by the record.

If Ryan, the grantor of Anderson, had kept and performed the terms of his contract with Mahony, from whom he purchased the lot, and had been entitled to a conveyance of the legal title, the contention of Anderson that the house and lot conveyed to him could not be subjected in this case, and that the case as to him ought to be dismissed, might be sustained. But that is not this case, as appears from the record, and as is shown by the opinion of the court upon the original hearing. Ryan had not performed his contract with Mahony. To aid him in performing that contract, Mahony had advanced him $3,000, which was a lien upon the three houses and lots, which Ryan was to receive in part payment for erecting the two houses on the lots retained by Mahony, and in addition, Mahony's two houses and lots were subject to the mechanic's liens asserted in the case. Ryan was not, therefore, entitled to a conveyance of the three houses and lots until he had paid Mahony the $3,000 advanced, as above stated, and until Mahony's two houses and lots were freed from the mechanic's liens, which had been perfected against them.

If Ryan were still the owner of the Anderson house and lot, although the liens of the mechanics had not been perfected against them, it is quite clear that they, along with the other two houses and lots, which Ryan was to receive from Mahony, could be subjected to the payment of the $3,000 due Mahony and the debts due the mechanics, which were liens not only on Ryan's two houses and lots, but upon Mahony's also. This being so, how did Ryan's sale and conveyance to Anderson relieve that house and lot from its liability for the payment of these debts? The sale and conveyance to Anderson could have no effect upon Mahony's rights, except as to the order in which the houses and lots retained by Ryan and the house and lot sold to Anderson should be subjected. Anderson, by his purchase, only acquired such interest in the house and lot as Ryan had as against Mahony.

As was said by Judge Allen, in *Yancey* v. *Mauck, &c.*, 15 Gratt. 300, 306, "A purchaser or incumbrancer of a mere equitable title must take the place of the person from whom he purchases. The vendor may resort to the estate, whether a purchaser of the mere equitable estate from his vendee purchasd with or without notice. For want of notice or the payment of a valuable consideration cannot place him in a more advantageous position than his vendor."

The house and lot purchased by Anderson is, therefore, as liable for the $3,000 due Mahony as if it were still owned by Ryan. Conceding that it is not liable for the mechanic's lien debts, because Anderson was not sued within the time prescribed by statute, it is liable for any sum that Mahony may have to pay to release his two houses and lots from those liens, for until his two houses and lots are freed from those liens, Mahony cannot be required to convey the Anderson house and lot to Ryan or anyone else in specific execution of his contract

with Ryan. If the proceeds of the Ryan houses and lots, other than the Anderson house and lot, are not sufficient to satisfy Mahony's debt of $3,000 and the lien debts of the mechanics, Mahony would have the right to have the Anderson house and lot subjected to satisfy any balance thereof that might be due him, and the mechanic's lien claimants would have the right to subject Mahony's two houses and lots for any balance due them. To the extent that Mahoney's property could be subjected to the payment of any balance of the mechanics' liens, to the same extent would Mahony have the right to subject the Anderson house and lot; for Mahony cannot be required to part with his title to the Anderson house and lot any more than to the other two houses and lots which he had agreed to convey to Ryan, except upon the terms of his contract with Ryan.

We are of opinion, therefore, that while the debts due the mechanics may not be liens upon the house and lot purchased by Anderson from Ryan, the house and lot are liable, under Ryan's contract with Mahony, for any balance thereof which the proceeds of the sales of Ryan's two houses and lots fail to pay and which is a lien upon Mahony's two houses and lots, and that the Chancery Court did not err in directing the Anderson house and lot to be sold for the purpose of satisfying such balance, if any, and that its decree should be affirmed.

*Affirmed.*