Staunton.

RINEHART & DENNIS COMPANY, INC., v. McARTHUR.

September 19, 1918.

1. MANDAMUS—*Purpose of the Writ—Collection of Debts.*—The writ of mandamus is an extraordinary legal remedy designed to meet emergencies and prevent a failure of justice, and is not designed as a remedy to enforce the collection of debts.

2. MANDAMUS—*Contractual Obligation—Collection from Public Officers.*—Mandamus cannot be used to enforce mere contractural obligations between private persons, nor, as a general rule, can it be used to enforce the collection of a mere money demand from a public officer if the creditor has a full, adequate and complete remedy by an ordinary action at law.

3. MANDAMUS—*Remedy at Law—Adequate and Complete.*—The question in mandamus proceedings is not whether the applicant has a remedy at law, but is that remedy adequate and complete. The other remedy is not adequate where it involves tedious and expensive litigation, or suits against third persons, or is obsolete and inoperative, or does not afford relief upon the very subject matter of litigation. It is not complete where it leaves unperformed the very act the performance of which is sought by the writ. There are also other instances where the remedy at law is not adequate and complete. But where an ordinary action at law will afford the applicant full, adequate, complete and speedy relief, mandamus as a general rule does not lie.

4. MANDAMUS—*Public Officers—Action on Official Bond.*—In a number of instances mandamus against public officers to enforce the payment of funds in their hands has been refused because the party applying for the writ had not exhausted his remedy on the officer's official bond. But the mere fact that a party has a remedy by an action on the official bond of an officer, however, will not alone bar relief by mandamus. Such a remedy may be far from adequate and complete.

5. PUBLIC OFFICERS—*Refusal to Pay Over Money on Order of Court—Contempt.*—Where money is in the hands of an officer of the court, subject to the order of the court, it is clearly a contempt of the court to refuse to surrender and pay over the money as

directed by the court, and obedience to the order may be enforced by contempt proceedings involving the imprisonment of the officer.

6. FINAL JUDGMENTS AND DECREES—*Order Directing Payment of Money.*—A decree which disposed of the whole subject of litigation, including the costs, and directed the clerk to pay over to the defendant, or to whom he should direct, money deposited by the defendant to abide the decree, and struck the case from the docket, is a final decree.

7. CONTEMPT—*Enforcement of Decree—Final Decree.*—The fact that a decree is final does not render the court powerless to enforce it by contempt proceedings, and such proceedings would not be a procedure *in the cause,* which was ended, but a procedure *beyond* the cause for the enforcement of the decree.

8. MANDAMUS—*Officer of Court—Jurisdiction.*—In the case at bar, a decree directed the clerk of the court to pay over to defendant in error a certain sum deposited by defendant in error with the clerk to abide the decree. This the clerk refused to do because the same was claimed by the plaintiff in error under an alleged equitable assignment. Thereupon defendant in error applied for a writ of mandamus against the clerk to compel the payment, and the writ was awarded him. Although mandamus did not afford, and could not have afforded any greater relief than the petitioner could have obtained by applying for contempt proceedings, yet as the trial court had jurisdiction by mandamus to compel its officer to do a merely ministerial act, concerning which he had no discretion, the proceeding by mandamus was not *per se* either void or voidable, and as no objection was raised to it in the trial court, by demurrer or otherwise, its award is not assignable error on appeal.

9. APPEAL AND ERROR—*Petition for Appeal—Mandamus.*—Objection cannot be made in the appellate court to the awarding of a mandamus where not mentioned in the petition for the writ of error.

10. MANDAMUS—*Objections Ex Mero Motu.*—Where the trial court has jurisdiction of the subject matter, objection to a mandamus, if available, cannot be noticed by the court *ex mero motu.*

11. APPEAL AND ERROR—*Harmless Error—Irregularities in Favor of Party Prevailing.*—Where the decision on the merits is in favor of the defendant in error, he cannot assign irregularities in the proceedings as error.

12. APPEAL AND ERROR—*Harmless Error—Irregularities.*—The Supreme Court of Appeals does not sit to correct all irregularities that may occur on the trial of a cause, but only such errors and irregularities as are prejudicial to the substantial rights of the party assigning them.

13. MANDAMUS—*Answer—Interpleader.*—In the instant case, defendant in error filed his petition for a mandamus against the clerk of court to compel payment by the clerk to him of a sum of money in the hands of the clerk. The clerk answered, disclaiming any interest in the fund, and offering to bring the money into court for its disposition, but alleging that the fund was claimed by the plaintiff in error as assignee of the defendant in error, and asking that his "answer may be treated as an interpleader." On exception to this answer, the court refused to accept it as an answer to the petition, but accepted it as a statutory interpleader under section 2998, Code of 1904, and allowed the plaintiff in error to come in by petition and assert its claim to the fund. Even if it be conceded that section 2998, Code of 1904, applies to a petition for a mandamus, the answer of the clerk did not comply with the requirements of that section, and the circuit court erred in directing it "to be treated as an interpleader." There was no reason, however, why the answer should not have been treated as an answer to the petition for the mandamus.

14. MANDAMUS—*Answers—Defenses.*—In mandamus proceedings, under sections 3011-3021, Code of 1904, it would seem that any defense may be made which shows that the petitioner is not entitled to the writ prayed for. If, as in the instant case, the defendant is the mere custodian of a fund, in which he claims no interest, but which is in good faith claimed by another, there is no good reason, under the liberal provisions of the new procedure, why the claimant should not be admitted as a party, and the rights of the parties thus speedily determined in the mandamus proceeding.

15. APPEAL AND ERROR—*Weight Attached to Decision of Trial Court.*—Where no controverted fact was passed on by the trial court, but solely a question of law, the judgment of the trial court is not entitled to the same weight as where given upon conflicting evidence upon a question of fact.

16. ASSIGNMENTS—*Orders—Consideration—Security for Existing Debt—Acceptance.*—An order upon a fund deposited with a clerk of court to abide the future decree of the court, given as security, in part, for an existing debt, is founded upon a valuable consideration, and it is immaterial that the beneficiary did not know of the order when it was given. The subsequent acceptance of it related back to the time it was given.

17. ORDERS—*Assignments—Revocation—Case at Bar.*—M., by his counsel, deposited a fund with a clerk of court to abide the event of a suit pending. Thereafter, M. gave an order in writing to his counsel to pay over the fund when "of not further service in" the suit pending to the R. & D. Co. Counsel

for M. was also counsel for the R. & D. Co.  The order was supported by a valuable consideration and M. intended by it to transfer the fund to R. & D. Co.

*Held:* That this constituted a valid equitable assignment of fund, which was irrevocable by M.

18.  ASSIGNMENTS—*Form.*—Equity looks at the substance of a transaction, and not its mere form.  No particular form of words is necessary to constitute a valid assignment in equity of a chose in action.  The intention of the assignor is the controlling consideration.·  If the owner of a chose in action, for a valuable consideration, signs and delivers a writing whereby he intends to part with his ownership, whether it be to the use of the assignee or of a third person, or to apply the proceeds to a specific purpose other than for the use and benefit of the assignor, it is a valid equitable assignment, regardless of the particular language used.  It is sufficient if the debtor would be protected in making payment thereon.

19.  ASSIGNMENTS—*Acceptance—Presumption.*—An assignment as security for an existing debt is founded on a valuable consideration, and its acceptance will be presumed until the contrary appears.

20.  RES JUDICATA—*Matters not in Issue.*—Where the record in a case presented no controversy between the assignor and assignee over the fund in dispute deposited with the clerk of the court, the decree in the case directing the clerk to pay the money deposited to the assignor does not render the matter in controversy *res judicata.*

Error to a judgment of the Circuit Court of Dickenson county, awarding a mandamus.

*Reversed.*

The opinion states the case.

*McNutt & Walker* and *Roland E. Chase,* for the plaintiff in error.

*Sutherland & Sutherland,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

Acting under a decree in the chancery suit of *Bucyrus Company* v. *McArthur and others*, M. T. McArthur one of the defendants therein, deposited with the clerk of the court $1,200, to be held by him to abide the future decree of the court. The parties to the litigation settled their differences and a decree was entered therein directing the clerk to pay the said $1,200 to McArthur, or to whom he might direct, and the case was stricken from the docket. McArthur then demanded the money of the clerk, but he refused to pay it, because it was claimed by the plaintiff in error under an alleged equitable assignment from McArthur. Thereupon McArthur applied to the judge of the Circuit Court of Dickenson county for a writ of mandamus against the clerk to compel the payment and delivery of the money. Upon a hearing on the merits, the judge awarded the writ, and to that judgment this writ of error was awarded.

The writ of mandamus is an extraordinary legal remedy designed to meet emergencies and prevent a failure of justice, and is not designed as a remedy to enforce the collection of debts. Merrill Man., section 67; High Ex. Rem., section 341. It cannot be used to enforce mere contractural obligations between private persons, nor, as a general rule, can it be used to enforce the collection of a mere money demand from a public officer if the creditor has a full, adequate and complete remedy by an ordinary action at law. The question is not whether he has a remedy at law, but is that remedy adequate and complete. The other remedy is not adequate where it involves tedious and expensive litigation, or suits against third persons, or is obsolete and inoperative, or does not afford relief upon the very subject matter of litigation. It is not complete where it leaves unperformed the very act the performance of which is sought by the writ. There are also other instances where the remedy at law is not adequate and complete. But where an

ordinary action at law will afford the creditor full, adequate, complete and speedy relief, mandamus as a general rule does not lie. *Sinclair* v. *Young,* 100 Va. 284, 40 S. E. 907; *Richmond Ry. Co.* v. *Brown,* 97 Va. 26, 32 S. E. 775; *Nottoway County* v. *Powell,* 95 Va. 635, 29 S. E. 682; *Lewis* v. *Whittle,* 77 Va. 415; *Page* v. *Clopton,* 30 Gratt. (71 Va.) 415, and cases cited; 26 Cyc. 168-172; 19 Am. & Eng. Encl. Law (2d ed.) 748-50; 2 Spelling Ex. Relief, secs. 1375, 1379.

In *Arrington* v. *Van Houton,* 44 Ala. 284, a county treasurer having funds in hand, refused to pay, on demand, a claim which had been duly allowed and filed, and it was held that mandamus would not lie as the creditor had a sufficient remedy by action on the treasurer's bond. For a like reason, mandamus was refused in *Speed* v. *Cocke,* 57 Ala. 209, where a county treasurer had, contrary to law, disregarded the order of registration of a claim and paid claims subsequently registered. In *Adair* v. *Hancock Deposit Bank,* 107 Ky. 212, 53 S. W. 295, a sheriff failed to pay over the county levy as directed, but mandamus was refused because the party should have exhausted his remedy on the sheriff's official bond. In *Evans* v. *Thomas,* 32 Kan. 469, 4 Pac. 833, it was said: "Writs of mandamus are not allowed to parties in any case as a mere matter of course. They are allowed only when parties have rights to enforce, and then only when they have no other plain and adequate remedy in the ordinary course of the law, and only when justice would be likely to be defeated or frustrated unless the writ of mandamus be allowed." See also *State* v. *Kansas City,* 38 Kan. 593, 17 Pac. 185. It is true that the Kansas cases cited were merely declaratory of the existing law that the "writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law." This same statute was adopted in Oklahoma, and that State has followed the Kansas cases. In *Steward* v. *Territory,* 4 Okla. 707, 46 Pac. 487, a probate judge had collected money by

virtue of his office, and it was held that mandamus would not lie to compel the payment of the money into the county treasury as an ordinary action on the bond of the judge furnished an adequate and complete remedy.

The mere fact that a party has a remedy by an action on the official bond of an officer, however, will not alone bar relief by mandamus. High Ex. Rem., sec. 35; 26 Cyc. 172. Such a remedy may be far from adequate and complete. For example, the refusal of a clerk to issue process, would give rise to an action for damages on his official bond, but as the relief is not adequate and complete, mandamus lies. *People* v. *Loucks,* 28 Cal. 69. So the refusal of an officer to issue a warrant to a creditor, after direction by superiors, may be enforced by mandamus although the creditor had a right of action on the officer's official bond. *Amer. Bridge Co.* v. *Wheeler,* 35 Wash. 40, 76 Pac. 534. Many other cases will suggest themselves.

In 26 Cyc. 172, it is said: "But in case of corporations and ministerial officers, there is an exception to the general rule, and they may be compelled to exercise their functions according to law by mandamus, even though the party has another remedy by action for neglect of duty." An examination of the cases cited, so far as available, shows that this statement does not apply where the function to be exercised consists in the mere payment of money for which a full, adequate, complete and speedy remedy is afforded by an ordinary action at law, but is applicable to the doing of some collateral thing. *People* v. *Loucks, supra; Cumberland, etc., Tel. Co.* v. *Morgan's, etc., R. Co.,* 51 La. Ann. 29, 24 So. 803, 72 Am. St. Rep. 442. See also note 34 Am. St. Rep. 317. Again, cases may arise where an action on the officer's bond would be a wholly inadequate remedy, as where a successor in office could not properly administer the functions of his office unless the money which belonged to the office was surrendered to the successor together with

everything else pertaining to the office. *Steward* v. *Territory, supra.*

In *Kidd* v. *Va. Deposit Co.,* 113 Va. 612, 75 S. E. 145, it was held that "imprisonment for debt passed away in this State with the abolition of the *capias ad satisfaciendum* in 1849, and, in a proceeding for contempt, where the contempt is not established, it is error to seek to enforce the return of money improperly paid, by an order directing the imprisonment of the defendant if the money be not paid." It will be observed that, in that case, the contempt was not established. It may be assumed for the purposes of this case that, in this State, a personal decree merely for the payment of money, in a suit by one private person against another, cannot be enforced by imprisonment, in the absence of any question of contempt. But where money is in the hands of an officer of the court, subject to the order of the court, it is clearly a contempt of the court to refuse to surrender and pay over the money as directed by the court, and obedience to the order may be enforced by contempt proceedings involving the imprisonment of the officer. 9 Cyc. 10 and cases cited. Clearly, then, the order of the chancery cause directing the clerk to pay over the money to the defendant in error could have been enforced by contempt proceedings, unless there is something in the suggestion that the decree was a final decree in that cause.

There can be no question that the decree in the *Bucyrus Case* was a final decree. It disposed of the whole subject of litigation, including the costs, directed the clerk to pay the money in controversy to McArthur, or to whom he should direct, and struck the case from the docket. *Rawlings* v. *Rawlings,* 75 Va. 76. But the fact that the decree was final did not render the court powerless to enforce it by contempt proceedings. Had the fact that the clerk refused to pay the money been reported to the court, it could, and doubtless would, have proceeded against him for contempt. Such

a procedure would not have been a procedure in the cause, which was ended, but a procedure *beyond* the cause for the enforcement of the decree. *Cocke* v. *Gilpin,* 1 Rob. 20, 28. As said by Judge Brooks, in the last mentioned case, "All decree must be enforced by attachment when any party is in contempt of the court, and this necessity is most frequent in cases of final decrees." Even in criminal cases, an order may be entered for the enforcement of the judgment, though the judgment be final and the penalty death. In *Nicholas* v. *Commonwealth,* 91 Va. 813, 815, 22 S. E. 507, 508, it is said, "there would be a strange lack of vitality in a court if it could not cause to be enforced by execution a valid and live judgment which it had rendered." No mandamus, therefore, was necessary to secure the enforcement of the decree.

The futility of the proceeding by mandamus is demonstrated by a comparison of the decree entered in the chancery cause with the order made in the mandamus proceeding. The decree directed "that the money deposited by the said M. T. McArthur with the clerk of this court may be released, and the clerk is directed to pay the same immediately to the said M. T. McArthur, or to whomsoever he may direct the same to be paid." By the judgment, "it is ordered that F. B. Chase, clerk, be and he is hereby directed and enjoined, immediately after the receipt of this order, or service of a copy of the same on him, to pay the said sum of $1,200 to said M. T. McArthur, or to whomsoever he may direct." It is difficult to discover any substantial difference between the decree and the judgment. Each was equally a judgment against the clerk, within the provisions of section 3557 of the Code (1904), declaring that "a decree for land or specific personal property, and a decree or order requiring the payment of money shall have the effect of a judgment for such land, property or money, and shall be embraced by the word 'judgment' where used in any chap

ter under this title," and it was the duty of the clerk to issue execution thereon as required by section 3581 of the Code. The mandamus, therefore, did not afford, and could not have afforded any greater relief than the petitioner could have obtained by applying for contempt proceedings, but as the trial court had jurisdiction by mandamus to compel its officer to do a merely ministerial act, concerning which he had no discretion, the proceeding by mandamus was not *per se* either void or voidable, and as no objection was raised to it in the trial court, by demurrer or otherwise, its award is not assignable error here. Nor can objection be made now to the awarding of the mandamus for the further reason that it is not mentioned in the petition for the writ of error. *Sands* v. *Stagg*, 105 Va. 444, 452, 52 S. E. 633, 54 S. E. 21, and cases cited; and as the trial court had jurisdiction of the subject matter, objection to the mandamus, if available, could not have been noticed by the court *ex mero motu.* Burks' Pl. & Pr., sec. 205; *South & W. R. Co.* v. *Commonwealth*, 104 Va. 314, 51 S. E. 824; *Hanger* v. *Commonwealth*, 107 Va. 872, 60 S. E. 67.

The proceedings in the circuit court were irregular, and led to confusion in the trial of the question involved, but as the decision on the merits was in favor of the defendant in error, he cannot assign these irregularities as error. This court does not sit to correct all irregularities that may occur on the trial of a cause, but only such errors and irregularities as are prejudicial to the substantial rights of the party assigning them.

The defendant in error filed his petition for a mandamus against the clerk. The clerk answered, disclaiming any interest in the fund, and offering to bring the money into court for its disposition, but alleging that the fund was claimed by the plaintiff in error as assignee of the defendant in error, and asking that his "answer may be treated as an interpleader." On exception to this answer, the court

refused to accept it as an answer to the petition but accepted it as a statutory interpleader under section 2998, and allowed the plaintiff in error to come in by petition and assert its claim to the fund. Even if it be conceded that section 2998 applies to a petition for a mandamus, the answer of the clerk did not comply with the requirements of that section, and the circuit court erred in directing it "to be treated as an interpleader." There was no reason, however, why the answer should not have been treated as an answer to the petition for the mandamus. The proceeding at common law on an application for a mandamus was very tedious and dilatory. It is set forth with great accuracy and fullness in the opinion of this court delivered by Judge Edward C. Burks in *Page* v. *Clopton,* 30 Gratt. (71 Va.) 415. The same distinguished judge was afterwards one of the revisors of the statute law of the State, and in an address before the Bar Association of the State in July, 1891, he had this to say on the subject: "The proceeding at common law in *Mandamus* and *Prohibition* were very dilatory, and complicated. Former statutes concerning these writs, while making some improvement, were very inadequate. They were omitted in the revision, and an entirely new procedure substituted, which would seem to be clear, simple and expeditions." Burks' Address, page 23. Under this new procedure, to be found in chapter 144 of the Code, the applicant files a petition, "verified by oath, after the party against whom the writ is prayed has been served with a copy of the petition and notice of the intended application, a reasonable time before such application is made." If defense is made, it is provided that "such defense may be by demurrer or answer on oath, to the petition, or by both." Code, section 3014. The judge of the court is given large vacation powers, and ample provision is made for a jury trial, if either party demands it. It is not stated what defenses may be made by answer, but it would seem that any

defense may be made which shows that the petitioner is not entitled to the writ prayed for. If, as in the instant case, the defendant is the mere custodian of a fund, in which he claims no interest, but which is in good faith claimed by another, we can see no good reason, under the liberal provisions of the new procedure, why he should not be admitted as a party, and the rights of the parties thus speedily determined in the mandamus proceeding. The error of the circuit court, therefore, consisted in treating the answer of the clerk as an interpleader instead of as an answer to the petition, but the result was the same; the chief difference being that the judge had vacation powers in *mandamus* which are not given to him in interpleader.

It is urged upon us that this case is to be considered as upon a demurrer to the evidence, that the evidence is conflicting, and therefore the judgment of the trial court must be affirmed. It is immaterial whether the case be heard as on a demurrer to the evidence or otherwise. There is no conflict of evidence on the question of the giving of the order to Rouse to pay the money to Rinehart & Dennis Company. McArthur admits that he gave the order. The controversy is over the effect of that order. The trial court did not pass on the validity or effect of the order, or on the state of accounts between the parties, but rested its conclusion solely on the defense of *res judicata*, which will be noticed later. No controverted fact was passed on by the trial court, but solely a question of law. Under such circumstances the judgment of the trial court is not entitled to the weight claimed for it.

We shall now consider the effect of said order. McArthur had deposited the money with the clerk through the medium of his counsel, W. H. Rouse, and thinking it would come back to him, when released, through the same channel, as Rouse testifies, he gave a written direction to Rouse as follows:

"Bramwell, W. Va., 10/15/15.

"Mr. W. H. Rouse,

"Clintwood, Va.

"Dear Sir:

"When the twelve hundred dollars I have deposited with the Dickenson county court in lieu of bond is of no further service in the *Bucyrus Case,* as security, please pay this amount to the order of Rinehart & Dennis Company, Charlottesville, Va.

"Yours very truly,

(Signed)    "M. T. McARTHUR."

This order was enclosed in a letter to Rouse, in which McArthur says: "In other words, when this money is ready to be turned over to me by the court, it is to be sent to Rinehart & Dennis Co. instead, but it is to remain with the court so long as it is any way necessary." The intention of McArthur at the time he gave this written direction to Rouse is clearly disclosed by his cross-examination as a witness in this cause, as follows:

"Q. Mr. McArthur, was it your intention at the time you gave the order that the money should be paid to the Rinehart & Dennis Company?

"A. Yes.

"Q. At that time you had no other intention but to pay them?

"A. No, sir.

"Q. You signed the order?

"A. I did not sign it.

"Q. You parted with the ownership of the $1,200, and it was to be paid to Rinehart & Dennis Company?

"A. Yes, sir, it was my intention for Rinehart & Dennis Co. to get that money."

McArthur afterwards by letter to W. H. Rouse, dated August 31, 1917, attempted to rescind the order. This letter is as follows:

"Tams, W. Va., 8/31/17.

"Mr. W. H. Rouse,

"Clintwood, Va.

"Dear Sir:

"I hereby rescind the order for $1,200, given you some-time ago in favor of Rinehart & Dennis Company. We are to have a settlement for work done by M. T. McArthur & Company, Dickenson county, and I do not want this money paid them. Shall ask that you have the clerk of the court forward it to J. R. Simmonds, Johnson City, Tenn.

"Yours very truly,

"M. T. McArthur."

At the time this order was given McArthur was person-ally indebted to Rinehart & Dennis Company in the sum of $2,500, for a note paid for him, and the latter firm also claimed a large sum of the firm of M. T. McArthur & Company. The note has since been reduced by payments to about $940, and McArthur claims that, upon a fair settlement, he does not now owe Rinehart & Dennis Company anything on the note or otherwise, and that, on the contrary, they are indebted to him.

The order was given as a security, in part, for an existing debt. It was, therefore, founded upon a valuable considera-tion, and it is immaterial that the beneficiary did not know of it, when given. The subsequent acceptance of it related back to the time it was given. *Evans, Trustee,* v. *Greenhow,* 15 Gratt. (56 Va.) 153. In fact, however, the order to Rouse was requested by letter from Rinehart & Dennis Company, dated October 11, 1915, and was actually given October 15, 1915, and was accepted not later than October 30, 1915. This order thus given and accepted McArthur subsequently, on August 31, 1917, attempted to revoke by a letter to Rouse whom he discharged as counsel, and he now claims that the fund belongs to him.

While the $1,200 was on deposit with the clerk, Mc-

Arthur gave the order hereinbefore recited to Rouse, who was counsel both for him and for Rinehart & Dennis Company.   This order, as we have seen, was supported by a valuable consideration and McArthur intended by it to transfer the fund to Rinehart & Dennis Company.   There is no dispute as to these facts, and Rinehart & Dennis Company claim that this constituted a valid equitable assignment of the fund, which was irrevocable by McArthur.   This claim, we think, is well founded.   Equity looks at the substance of a transaction, and not its mere form.   No particular form of words is necessary to constitute a valid assignment in equity of a chose in action.   The intention of the assignor is the controlling consideration.   If the owner of a chose in action, for a valuable consideration, signs and delivers a writing whereby he intends to part with his ownership, whether it be to the use of the assignee or of a third person, or to apply the proceeds to a specific purpose other than for the use and benefit of the assignor, it is a valid equitable assignment, regardless of the particular language used.   It is sufficient if the debtor would be protected in making payment thereon.   *Tatum* v. *Ballard*, 94 Va. 370, 26 S. E. 871; *Harlow* v. *Bartlett*, 96 Me. 294, 52 Atl. 638, 90 Am. St. Rep. 346; *Fairbanks* v. *Sargent*, 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475; *Canterbury* v. *Marengo Abstract Co.*, 166 Ala. 231, 52 So. 388, 139 Am. St. Rep. 30; 2 R. C. L., section 21, and cases cited.   It is immaterial that Rouse was acting in the capacity of attorney and agent of both McArthur and Rinehart & Dennis Company.   The writing was signed by McArthur himself and it was the duty of Rouse, under the terms of the assignment, to collect the money and "pay this amount to the order of Rinehart & Dennis Company."   *Smith* v. *Lamberts*, 7 Gratt. (48 Va.) 138.   The undisputed evidence in the case measures up fully to these requirements.   The case of *Hicks* v. *Roanoke Brick Company*, 94 Va. 741, 27 S. E. 596, has been cited for the

defendant in error to show that the writing in controversy
does not measure up to the requirements of an equitable
assignment. We do not so construe that decision. The hold-
ing in that case is well set forth in paragraph 3 of the sylla-
bus as follows: "The mere promise of the assignee of a
fund not in hand that he will, when and as he receives the
fund, pay a debt of the assignor, does not give an equitable
lien on the fund, nor operate as an equitable assignment
thereof. To constitute an equitable assignment, there must
be an assignment of the fund or some definite portion
thereof, or an order on the person owing the money to the
drawer, or holding funds belonging to him, so that the per-
son owing the debt, or holding the fund on which the order
is drawn, can safely pay the order, and is compellable to do
so, though forbidden by the drawer."

In that case Patterson, a contractor for work to be done
for the city of Roanoke, conveyed all funds coming to him
from the city to a trust company, and the latter promised
the Roanoke Brick Company that *it would pay*, until fur-
ther notice, for bricks furnished to Patterson as and when
the money therefor was received by it from the city. All
that was decided on this point was that this promise of the
trust company did not constitute an equitable assignment
of any part of the funds in the hands of the trust company.
The reasons for the conclusion reached are well expressed
by Riely, J., as follows: "Patterson gave no order to the
brick company on the city of Roanoke, which was to become
his debtor for the construction of the sewers, for the latter
to pay to the former for the brick it furnished to him. He
did not assign or transfer to it for such purpose any part
of the fund thus to become due to him. The agreement,
upon which it relies for the creation of an equitable lien in
its favor on the said fund, is a mere agreement and promise
by the Fidelity Loan and Trust Company to pay, when and
as it collects from the city the money it would owe Patter-

son. This did not operate as an equitable assignment. It gave to the brick company no control of the fund, and the company acquired no lien on it, and further, the condition upon which the Fidelity Loan and Trust Company agreed to pay to the brick company never has been, and now never can be, fulfilled. It only promised to pay out of the fund now in controversy when it received it. The assignment having been annulled, its authority to collect or receive the money coming to Patterson from the city of Roanoke was thereby terminated. The city could not thereafter pay the money to it, and it had no longer any right to receive it. The money never came to its hands, and the occasion when it was to pay the brick company has never arisen, and never can arise."

In the instant case the facts are entirely different. The order is given directly by McArthur himself and he dedicates the entire fund to a particular purpose. He states explicitly that it was his intention at the time the order was given that the money should be paid to Rinehart & Dennis Company; that he parted with the ownership of the $1,200 and intended that Rinehart & Dennis Company should get it. Upon principle, and upon the authorities cited, such dedication constituted a valid equitable assignment of the fund, although the order was directed to Rouse, the attorney of both parties, and who was expected to collect the fund, and not to the clerk who had actual custody of it. The assignment, being a security for an existing debt, was founded on a valuable consideration, and its acceptance will be presumed until the contrary appears. *Evans, Trustee,* v. *Greenhow,* 15 Gratt. (56 Va.) 153, 156. Such an assignment is irrevocable by the assignor.

It has been earnestly insisted that the language used in the order renders the assignment conditional and that in order to constitute a valid equitable assignment "the order must be unconditional." There was no condition about the

order in question. It transferred unconditionally all interest of the assignor in the fund, and he testifies that such was his intention. The most that can be made out of the language used in the order is that the fund was or might be subject to a prior claim in the *Bucyrus Case.* So far as the assignor was concerned it transferred absolutely and unconditionally all interest he had in it. This was sufficient. We do not mean to concede, however, that a conditional order is not sufficient, if the condition is subsequently fulfilled before the rights of the parties have been in any way altered, as in the case at bar. It is unnecessary to pass upon that question, and we express no opinion upon it.

Finally, it is said that the decree in the *Bucyrus Case* renders the matter in controversy *res judicata*, as the order to Rouse was given nearly two years before that decree was entered and both Rouse and Rinehart & Dennis Company were parties to that suit. This cannot be true. What is not within the pleadings cannot be adjudged. Courts cannot go outside the record and decide issues not made by the pleadings. The record in the *Bucyrus Case* presented no controversy between the plaintiff in error and the defendant in error over the fund in dispute, so far as is disclosed by the record in this case, and the decree directing the clerk to pay the money to the defendant in error left the rights of these parties *inter sese* just where it found them. *Tarter* v. *Wilson*, 95 Va. 19, 27 S. E. 818; *Kelly* v. *Hamblen*, 98 Va. 383, 36 S. E. 491. For cases in other jurisdictions, see 24 Am. & Eng. Enc. Law (2d ed.), 775.

It is stated in the brief for the defendant in error that the decree directing the fund to be paid to the defendant in error was entered by consent, but we are unable to verify that statement from the record in this cause.

For the reasons hereinbefore given the judgment of the circuit court must be reversed, and this court proceeding to enter such judgment as the circuit court should have en-

tered, will direct the clerk of the Circuit Court of Dickenson county to pay over the fund in controversy to the plaintiff in error.

*Reversed.*

SIMS, J., concurring:

I concur in the opinion delivered by Judge Burks. I wish, however, to add the following:

I think if the note paid for McArthur by Rinehart & Dennis Company, Inc., for $2,500, which to the extent of $1,200, was the consideration which supported the equitable assignment involved in the case, and which consideration existed at the time such assignment was made, had been paid and satisfied in full before the $1,200 covered by said assignment became payable, then, in equity, McArthur would have had the right thereupon or thereafter to revoke said assignment. For the assignment being made to secure the payment of a debt, itself created a contract between the assignor and assignee which was executory until the money payable thereunder was in fact paid to the assignee. And it was essential to the continued validity of the assignment, after the attempted revocation thereof by his assignor, that the original valuable consideration therefor should have continued to exist at the time the assignee demanded the payment of the money thereunder.

On the question as to whether said consideration continued to exist at the time the assignee, Rinehart & Dennis Company, Inc., demanded the payment of the money thereunder, the record presents the following situation:

The testimony for said assignee is distinct and positive that such consideration so continued to exist, and that a further indebtedness, indeed, existed of McArthur to such assignee, to the aggregate amount of some $30,000. This testimony was *not* given *ore tenus* before the court below,

but by depositions duly taken elsewhere and read before the court on the hearing of the case.

The testimony of McArthur *was* given *ore tenus* before the court below and on the subject under consideration, and while he testified that he had, after giving said assignment and before his attempted revocation of it, paid on said $2,500 note and reduced the principal thereof to "nine hundred and forty odd dollars," he admitted that the balance still left unpaid and owing thereon "with interest, might bring it into the neighborhood of $1,100 or $1,200." There is, therefore, no real conflict between the evidence for said assignor and said assignee as to the continued existence of the original consideration for said assignment to the extent of said $1,200 thereof at the time the payment of the money thereunder was demanded by the assignee.

The only conflict between the testimony for said assignee and that of said assignor with respect to the indebtedness of the latter to the former is this: The testimony for the assignee is, as aforesaid, that McArthur owed it a total amount of some $30,000 as of the time the depositions aforesaid were taken, to-wit, on November 2, 1917; whereas McArthur, testifying on November 17, 1917, as aforesaid, stated, in substance, that he owed said assignee only about $1,200, the balance on said note as aforesaid; that that was the only debt he owed said assignee as he supposed—(as "I suppose," to use the language of the witness)—and that if there was any other indebtedness to such assignee it was not an indebtedness of his, but "if it is" (an indebtedness of) "anybody it is M. T. McArthur & Company" (to again use the language of the witness). M. T. McArthur & Company was a partnership in which the witness claimed to have an interest. McArthur admits that in May, 1914, M. T. McArthur & Company owed Rinehart & Dennis Company, Inc., $32,000, according to a statement then rendered by the latter. He testified that there were subsequent transactions

between M. T. McArthur & Company and Rinehart & Dennis Company, Inc., of which he had never been able to get the latter to render a statement of account; that consequently he had employed counsel to bring suit against the latter in a federal court, and that this was the reason he gave the order of attempted revocation of said assignment. As to how the accounts between M. T. McArthur & Company and Rinehart & Dennis Company, Inc., in fact stood or stand, if accurately settled, no sufficient evidence is furnished by McArthur by his own testimony or otherwise, to enable the court below or this court to determine. He does not, indeed, appear to definitely claim that he knows that there would be a balance found due M. T. McArthur & Company, upon such a settlement, in which his interest would be sufficient to cover or amount to a set off against said $1,200 balance of individual indebtedness of his to Rinehart & Dennis Company, Inc. The most that can be said of his testimony is that he had employed counsel to institute suit to obtain such a settlement of accounts between M. T. McArthur & Company and Rinehart & Dennis Company, Inc., and that he will *claim* in such suit that the latter would be found upon such settlement to owe the former to a sufficient amount to give rise to such set off. McArthur, by counsel, declined indeed to go into the question of fact in this suit of how such account stands; the position of such counsel being (as stated in the record) that he objected to certain questions on this subject addressed to McArthur by opposing counsel," * * * because it is immaterial whether they" (Rinehart & Dennis Company, Inc.,) "owe McArthur or McArthur owes them, because if there is a *bona fide* claim that is sufficient in that case, just so there is a *bona fide* belief, and it is none of the court's business at this time."

Therefore, it cannot be said that such testimony of McArthur although heard *ore tenus* by the court below, and

although full credence were given to it, is sufficient to show that said original consideration to the extent of $1,200 indebtedness from McArthur to Rinehart & Dennis Company, Inc., had been extinguished by the set off aforesaid and no longer existed at the time the payment of said order was demanded by the latter. Nor does it appear from the record that the court below so found as a matter of fact. On the contrary, as pointed out in the majority opinion, the honorable trial judge placed his ruling upon another ground.

For the foregoing reasons, in addition to those set forth in the opinion of Judge Burks, I am of opinion to reverse the judgment of the court below and to enter judgment for the said assignee.