## Wytheville.

## WASHINGTON AND OLD DOMINION RAILWAY v. WARD'S ADMINISTRATOR.

### June 8, 1916.

### Absent, Cardwell, J.

1. WITNESSES—*Sequestration—Disobedience of Order.*—One not summoned as a witness and who did not know that he would be called as a witness, will not be excluded from testifying on account of failing to obey an order of sequestration, although present in court when the order was made, where it appears that counsel calling him had not previously talked to him about the case, and did not know he was in court until the moment before he was called to the stand.

2. WITNESSES—*Experts—Opinions—Case at Bar.*—A witness familiar with the operation of electric cars, who had worked for the defendant thirteen months, part of that time as motorman, had frequently operated the car alleged to have caused the injury under investigation, and was familiar with the track and other conditions at the place of the accident, may testify as to the distance within which he could stop said car.

3. BILLS OF EXCEPTION—*Objection to Evidence—Question and Answer Only.*— A bill of exception which shows absolutely nothing of the evidence except the question and answer objected to is fatally defective.

4. APPEAL AND ERROR—*Striking out Illegal Evidence or Statements of Counsel —Prejudicial Effects.*—A judgment ought not to be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* courts.

5. RAILROADS—*Licensees—Duty to—Prevision.*—Railroad companies do not owe any duty of *prevision* to licensees, but must, with the facilities at hand and under the circumstances as they exist at the time, exercise reasonable care to discover and avoid injuring them.

6. INSTRUCTIONS—*Evidence to Support.*—It is not error to refuse an instruction when there is no evidence to support it. Nor should any instruction be given on a theory of the case unsupported by the evidence.

7.  Instructions—*Conflicting Theories—Ignoring One of Them.*—Where there are two conflicting theories of a case and the evidence is conflicting, and each theory has been covered by a separate instruction, while it is not error to give another instruction covering both theories, no other instruction should be given covering only one of such theories, as it would give undue emphasis to that theory.

8.  Railroads—*Licensees—Duty of Lookout.*—If a railroad company knows, or is charged with knowledge of the fact, that a bridge on its road has been constantly used for months and is still being used as a foot way by the public, including children, then it is the duty of the company to use ordinary care to discover persons on such bridge and in danger of injury, and if it fails to use such care and in consequence thereof a person is injured, the company is liable, unless those in charge of its cars did all in their power consistently with their own safety and the safety of those to whom it owed a higher duty to avoid the injury after they discovered the peril of the person injured, or might have discovered it by the exercise of ordinary care in keeping a proper lookout for such person at the point where the injury was inflicted.

9.  Negligence—*Death of Infant—Action for Benefit of Parents—Contributory Negligence of Parents.*—Where a boy six years old who had been told to stay at home on a given day, but was allowed to play on the streets near his home and within certain well defined limits and had never at any time been given permission to leave the city, left the city without the knowledge or consent of his parents, and was killed by a street car a short distance outside of the city limits, they were not guilty of such contributory negligence as will bar a recovery for his death in an action for their benefit.

Error to a judgment of the Circuit Court of Alexandria county, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*C. E. Nicol, W. J. Lambert* and *George B. Fraser*, for the plaintiff in error.

*Crandall Mackey*, for the defendant in error.

Kelly, J., delivered the opinion of the court.

John M. Ward, a boy six years and three months old, was killed by an electric car owned and operated by the Washington and Old Dominion Railway. His administrator thereupon brought this action and recovered the judgment to which this writ of error was awarded. The parties will hereinafter be designated as plaintiff and defendant, respectively, in accordance with their status in the lower court. We will dispose of the assignments of error in the order in which they were presented to us.

1. A demurrer to the declaration was overruled, and this action of the trial court, although assigned as error, was plainly right. The declaration contained two counts. The first count stated a good cause of action against the defendant company, treating the boy as a naked trespasser, and the second an equally good one upon the theory that he was a licensee. The duty which a railroad company owes to trespassers and licensees has been frequently declared in the decisions of this court, some of which will be hereinafter referred to, and we deem it unnecessary to do more in this connection than to say that the declaration amply charged a breach of such duty.

2. The court ordered that the witnesses be excluded from the court room during the trial. The witness, Johnson, was present when this order was made, but he had not been summoned and did not know he was to be called as a witness. Counsel for plaintiff had not talked to him about the case, and did not know he was in court until the moment before he was called to the stand. He was third in order of some thirty or more witnesses. The defendant objected to his testimony, claiming that he was rendered incompetent by being in court under the circumstances detailed, but this contention is not sound. See *Hey's Case*, 32

Gratt. (73 Va.) 946, 948, 34 Am. Rep. 799; *Brown's Case*, 90 Va. 672, 675, 19 S. E. 447; *Jackson's Case*, 96 Va. 107, 110, 30 S. E. 452; 1 Greenleaf, secs. 431, 432.

3. The witness, H. C. Beam, was allowed, over defendant's objection, to testify as to the distance within which he could stop car No. 4 of defendant's line. The objection was, first, that he was not shown to be an expert as to the space within which he could stop the car at the place of the accident, and, second, that car No. 4 was not shown to have been the car which caused the decedent's death. Neither ground of objection was good. It appeared that Beam had been engaged off and on for some fifteen years in and about the operation of electric cars, had worked for the defendant for a period of thirteen months, part of that time as motorman, had frequently operated car No. 4, and was familiar with the track and other conditions at the place of the accident. There was also evidence tending to show, and upon which the jury might have found, that car No. 4 was the car which struck and killed the boy. The distance within which the car could be stopped was a material question, and the court was clearly right in allowing the testimony of this witness to go to the jury.

4. The witness, Burrell, was permitted to testify as to the proper position of a motorman on car No. 4. The defendant here again objected, on the ground that the car in question had not been shown to have caused the injury. For the reasons last above stated, this assignment of error must be overruled.

5. Louise Jones, a witness for the plaintiff, was asked to "tell the jury whether or not there was any motorman in the front of that car, where the motorman usually stands." Her reply was, "If he was I did not see him. I guess he was there but he

must have been looking another way." The defendant objected to this question and answer, and the action of the court in overruling the objection is the basis of the fifth assignment of error. The bill of exceptions taken to save this point shows absolutely nothing of the evidence except the question and answer, and is fatally defective under the ruling of this court in *Jacobs* v. *Warthen*, 115 Va. 571, 80 S. E. 113; but we have nevertheless considered it in the light of the whole of the testimony of the witness, Louise Jones, (appearing elsewhere in the record) and we are fully satisfied there was no error in overruling the objection.

6. During the course of the cross-examination of the defendant's witness, M. W. Bowen, counsel for plaintiff undertook to question him about some supposed adverse comment made by him upon the verdict of the coroner's jury. The avowed purpose of the inquiry was to show bias on the part of the witness. Counsel for defendant objected, making the comment that "the vice of a great deal that has happened is that Mr. Mackey is getting before the jury what he knows is improper," to which comment counsel for plaintiff replied, "I am going to show the bias of this witness, not when the jury is locked in the room out of sight but when the jury hears the evidence." Counsel for defendant immediately excepted to this latter remark, and further insisted that any question as to the coroner's jury should be asked out of the presence of the jury. After some further controversy, the witness was asked by plaintiff's counsel whether he had not reproached his brother for signing the verdict of the coroner's jury, to which he replied, "I did not." The court then stated that it would rule out everything that had occurred in connection with this part of the examination.

The suggestion that the witness had shown a bias against the plaintiff by a disapproval of the verdict of the coroner's jury could, of course, only mean that the inquest had resulted adversely to the railway company; and the defendant's counsel contend that the action of the court in excluding what had occurred was not sufficient to overcome the alleged prejudicial impression made upon the minds of the jury by the reference to the inquest.

There are cases in which the error of admitting improper testimony, or the effects of mere statements of counsel, cannot be adequately overcome by a subsequent direction to the jury to disregard the objectionable evidence or statements. Such cases, however, are exceptions, and we do not think this is one of them. In the multitude of questions arising in jury trials, and in the zeal and earnestness of counsel, however well intended, it is practically impossible for the court to keep the case on trial at all times entirely free from minor irregularities and mistakes; and the course taken by the trial judge in the present instance is in accord with a common and widely approved practice. A judgment ought not to be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* courts. In this case, the judge expressly told the jury that the verdict at the coroner's inquest had nothing whatever to do with the questions before them, and he furthermore ruled out the entire examination and discussion concerning it. If, therefore, it be conceded that the plaintiff's counsel was not within his legal rights in opening up

this subject for the avowed purpose of showing a bias on the part of the witness, the incident, as we view it, involves no reversible error. See the general discussion of this subject in the text, 29 Cyc. pp. 775-783, and authorities cited in the notes thereto.

7. The seventh assignment of error calls in question the correctness of the following instruction given on behalf of the plaintiff:

"The court instructs the jury that if the jury find from the evidence that the defendant's right of way at the point where the accident occurred was, at the time of the accident, and prior thereto, being constantly used as a foot-way by men, women and children, passing over it daily and at all hours, for such length of time as to put the railway company on notice of same, then the defendant, its motormen and servants, are, in law, charged with notice that it was so used, and it then became the duty of the defendant company to use ordinary care to discover John Milton Ward (an infant of the age of six years, three months and fifteen days), if on the track on the bridge on which the train was proceeding, and in danger at the place mentioned, and that if the defendant did not use ordinary care, and that, by its failure so to do, the said accident occurred, then they must find for the plaintiff's intestate, even though the said plaintiff's intestate, if an adult, would have been guilty of contributory negligence, provided they believe from the evidence that the servants of the defendant company, in charge of its car, did not do all that they could consistently with their own safety after the danger of the said John Milton Ward was known, or might have been discovered, by the said servants of the defendant by the exercise of ordinary care in keeping a lookout for persons at the point where the accident occurred.

*Norfolk & Western R. R. Co.* v. *Carr*, 106 Va. 508, 56 S. E. 276."

This instruction, in effect, was approved in *N. & W. Ry. Co.* v. *Carr*, 106 Va. 508, 511, 56 S. E. 276, and is challenged here only on the ground that the evidence in the case did not warrant it. We think otherwise, as will appear when we come to deal with the evidence somewhat in detail under the last assignment of error.

8. The following instruction, asked for by the defendant, was refused:

"The court tells the jury that it is not the duty of a railroad company to have a look out on its front car, or to make any previous preparation for the discovery of licensees or trespassers on its track or bridge."

There was a motorman whose regular and proper position was on the front of the car. The evidence tended to show that the bridge on which the boy was walking was in common and well known use as a walkway by pedestrians, and especially by children; and further tended to show that the motorman was not keeping a reasonable lookout ahead. The instruction would have been plainly misleading. Railroad companies do not owe any duty of *prevision* to licensees, but must, with the facilities at hand and under the circumstances as they exist at the time, exercise reasonable care to discover and avoid injuring them. *Blankenship* v. *C. & O. Ry. Co.*, 94 Va. 449, 27 S. E. 20; *C. & O. Ry. Co.* v. *Rogers*, 100 Va. 324, 333, 41 S. E. 732; *N. & W. Ry. Co.* v. *Carr, supra.*

9. The following instruction requested by the defendant was likewise refused:

"The court tells the jury that if they believe from the evidence that the motorman on the car of defendant which killed plaintiff's decedent actually saw the decedent of plaintiff on the bridge of defendant, but

thought said decedent was in a safe position, and that said car would not strike said decedent, said motorman was under no obligation to stop his car, but had the right to proceed without stopping."

It is a sufficient comment upon this instruction to say that the entire testimony of both plaintiff and defendant was to the effect that the motorman did not see the child at all, and the defendant claims that even the car which struck him has never been identified. There was not the slightest evidence upon which to rest the instruction. Defendant's counsel insist that it should have been given as the embodiment of one of its theories of the case. The plain answer is that this theory was not only without evidence to support it, but was contrary to the evidence on both sides, and was, therefore, a mere conjecture, and an inconsistent one at that.

10. The defendant requested an instruction which the court gave with a qualification added thereto, and the defendant excepted to the latter. The instruction as given follows, the qualification complained of being indicated by the words in italics:

"The court tells the jury that railroads owe no duty to children trespassing on their tracks or bridges, except the negative duty not to injure them after discovering their presence, *unless the jury further believe from the evidence that the bridge where the accident occurred had been constantly used by the public for some months, including children, and which fact was known to the defendant company.*"

The defendant's theory of the case was that the child was a naked trespasser, while the plaintiff's theory was that he was a licensee. The evidence was conflicting upon this point, and the jury might have found either way upon it. The defendant's theory,

with directness and emphasis and in form exactly as requested, was submitted to the jury in its instructions 3 and 7.   The plaintiff's theory was likewise submitted in the form requested by him.   There was no real occasion, therefore, for any further instruction upon either aspect of the case, but there was no error, in view of the other instructions, in covering both aspects in the one here under consideration; and we may add that to have given it as originally asked, without the added modification, would have been an improper repetition and have laid undue emphasis upon the defendant's theory.

11.   The last assignment is that the court erred in denying the motion for a new trial as being contrary to the law and the evidence.

It appears that in the afternoon of December 21, 1914, the little boy, John Ward, without the knowledge of his parents, had started with two older boys from the city of Washington, where they resided, to the southern, or Virginia, side of the Potomac to get some holly and a Christmas tree.   They walked across the river on what is called the Aqueduct Bridge, and further on encountered a railway bridge or trestle which crossed above a county road.   They could have gone down upon and across this road without walking on the bridge, but they chose the latter, and in doing so followed what the plaintiff's evidence tended strongly to show had for some time been a very general and well known practice by men, women and children, especially by school children in the afternoon.   While on this bridge the boys were met by a trolley car on its way to Washington.   Two of them managed to get out on the beams of the bridge to a place of safety, but the Ward child was struck by the car and istantly killed.   The car did not stop, and neither the car nor

the motorman involved has ever been certainly identified. All motormen operating cars on the line at the time were questioned about the accident, and stated that they knew nothing of it. The evidence is convincing that if the motorman had looked he could have seen these children in ample time to have avoided the accident. The two older boys and Louise Jones witnessed the accident and all three of them testified that the motorman was looking away from the direction in which his car was going. This must have been true. It is not believable that he saw and wilfully ran upon them, and it is incredible, under the evidence, that he could have kept a reasonable outlook without seeing them.

The evidence was entirely sufficient to support the verdict, and the jury were correctly instructed upon the law of the case.

The defendant's contention that there should be no recovery because the negligence of the boy's parents, to whose benefit the recovery will enure, contributed to the accident, is without evidence to support it. His father left him on the street in Washington, three doors from his home, a very short time before the accident, and told him to stay at home that afternoon as his mother wanted to buy him a suit of clothes. The boy was allowed to play on the streets near his home and within certain well defined limits, but had never been given permission at any time to go into Virginia, and went this time without the knowledge or consent of his parents.

There is no error in the judgment complained of, and it will be affirmed.

*Affirmed.*