𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

P. LORILLARD COMPANY, INC., V. CLAY.

September 16, 1920.

1. APPEAL AND ERROR—*Case Must be Stated as Jury May Have
   Viewed it.*—Formerly a plaintiff in error stood in the Supreme
   Court of Appeals in the position of a demurrant to the evi-
   dence, but this has been changed. Code of 1919, sec. 6365.
   Now, in stating a case in the Supreme Court of Appeals which
   has been tried by a jury, it must be stated as the jury may have
   viewed it, remembering always that the jury are the sole
   judges of the weight to be given to the testimony of the wit-
   nesses, and also bearing in mind the weight attached to the
   verdict of a jury which has received the approval of the trial
   judge.

2. AMENDMENTS—*Stating New Cause of Action—Limitation of Ac-
   tions.*—In an action by a servant for the loss of an eye, caused
   by the breaking of the bit of a drill, plaintiff's declaration
   was amended charging an additional ground of negligence on
   the part of defendant, to-wit, that the drill was out of repair
   and was too heavy to use with a one-fourth inch bit, which
   resulted in the injury complained of. Objection was made
   that the amendment stated a new cause of action which was
   barred by the statute of limitations.

   *Held:* That the amendment did not state a new cause of action.

3. AMENDMENTS—*New Cause of Action.*—If an amended declaration
   asserts rights or claims arising out of the same transaction,
   act, agreement, or obligation as that upon which the original
   declaration is founded, it will not be regarded as for a new
   cause of action, however great may be the difference in the
   form of liability asserted in the two declarations.

4. PLEADING—*Time of Filing—Discretion of Court.*—A very large
   discretion is vested in the trial courts in the matter of the
   time for filing pleadings, and when not controlled by statute
   their action will not be set aside unless plainly erroneous.

5. PLEADING—*Time of Filing—Plea of the Statute of Limitations—
   Harmless Error.*—The rejection by the trial court of defend-
   ant's plea of the statute of limitations to an amendment of

the declaration, on the ground that it was not filed in time, was harmless, as the amendment of the declaration did not make a new case, and the cause of action was not barred at the time the original action was instituted.

6. VIEW—*Discretion of Trial Court.*—The motion for a view is addressed to the sound discretion of the trial court, and its ruling refusing a view will not be reversed unless it appears from the record that a view was necessary to a just decision.

7. VIEW—*Object.*—The view of the grounds at the scene of an accident which is the basis of an action may better enable the jury to apply the testimony disclosed upon the trial, but does not authorize them to base their verdict on such view, nor to become silent witnesses to facts which were not testified to in court.

8. VIEW—*When Granted.*—The propriety of ordering a view lies largely in the discretion of the trial court, which should only grant it when it is reasonably certain that it will be of substantial aid to the jury in reaching a correct verdict, and its decision refusing a view will not be reversed unless the record shows that it did appear to the trial court that such view was necessary to a just decision, and that the statutory provision for expenses in a civil case were complied with.

9. VIEW—*When Granted.*—There are cases where a view will furnish "a distinctly additional source of proof, *i. e.*, the thing itself as autoptically observed." In such case the view should be granted, as it would be "of substantial aid to the jury in reaching a correct verdict."

10. VIEW—*Refusal—Case at Bar.*—In the instant case a view of the premises was rightly refused on the ground that the accident happened some eighteen months prior, when conditions may have been different, especially in view of the absence of any evidence that conditions were the same when the view was asked as when the accident happened.

11. APPEAL AND ERROR—*Assignment of Error—Instructions—Evidence Not Set Out—Case at Bar.*—An assignment of error that the evidence in the case did not support the latter parts of four lengthy instructions, and stating that the evidence had been so fully discussed that petitioner deemed it unnecessary to discuss it again under each instruction, is insufficient. It is not sufficient to say of an instruction simply that the latter part of it is not justified by the evidence, and to make the same objection in gross to four lengthy instructions aggravates the difficulty.

12. APPEAL AND ERROR—*Assignment of Error—Instructions—Evidence Not Set Out—Case at Bar.*—To say that the "evidence in this case did not justify the instructions" is an admission

that there was evidence in the cause upon which the trial court based its instructions, but a denial of its sufficiency. The petition should have set out the evidence and pointed out wherein it was insufficient as a basis for the instructions. The Supreme Court of Appeals will not undertake that burden. The fact that the greater part of the evidence had already been discussed in the petition in another connection does not relieve the petitioner from the necessity of showing that there was not sufficient evidence to support the instructions.

13. APPEAL AND ERROR—*Assignment of Error—Reply Brief.*—The Supreme Court of Appeals will not, as a rule, notice assignments of error made for the first time in the reply brief of the plaintiff in error, as it is not a compliance with the statute on the subject and is not fair to the defendant in error.

14. APPEAL AND ERROR—*Assignment of Error—Instructions not Supported by the Evidence—Assignment Must be Specific.*—An assignment of error in general terms, where the petitioner does not "lay his finger on the error," or which requires the appellee or the court to hunt through the record from beginning to end to ascertain what the evidence is that the plaintiff in error deems insufficient to support an instruction, when the plaintiff in error could easily put his finger on it, places a burden upon the court that it ought not to be expected to bear.

15. INSTRUCTIONS—*General Duty of Jury.*—In an action for personal injuries, defendant asked for an instruction that it is the duty of the jury to try the "case without being influenced by sympathy or the mere fact that the plaintiff was injured. The jury are under a solemn obligation to try the case according to the law and the facts," etc.

*Held:* That there was no error in refusing this instruction, as it was covered by the oath of the jurors, and could not have been helpful in arriving at a verdict.

16. INSTRUCTIONS—*Evidence to Support Instructions.*—In an action by a servant against his master for the loss of an eye caused by the breaking of the bit of a drill, there was evidence tending to show that the drill was too heavy for the work on which it was used. It was not error, therefore, to refuse an instruction that there could be no recovery in the case on the ground that the drill was too heavy for the work, especially as the defendant's view of that question was fully covered by other instructions.

17. ASSIGNMENTS OF ERROR—*Sufficiency of Assignment—Error in Instructions.*—An assignment of error, upon the refusal of an instruction, was as follows: "The petitioner submits that this instruction should have been given."

*Held:* That the error, if any, in refusing the instruction was

not sufficiently assigned, as the Supreme Court of Appeals will not search the record for errors not pointed out in the petition.

18. INSTRUCTIONS—*Repetition.*—It is sufficient in all cases for the trial court to give such instructions as are necessary or proper to enable the jury to arrive at a correct verdict, after considering the evidence in all of its phases. After so instructing them it may reject all other instructions tendered as it is never error to refuse an instruction upon any point upon which the jury has already been sufficiently instructed.

19. INSTRUCTIONS—*Prepared by Counsel or by the Court.*—If the instructions given are founded upon the evidence, correctly state the law, and fully cover the case, it is immaterial whether they were prepared by counsel or by the court, and all other instructions may be refused.

20. ARGUMENTS OF COUNSEL—*Personal Injury Suit—Reference to Insurance.*—In an action for personal injuries, counsel for the plaintiff stated in his argument that employers were willing to go ahead and take chances and leave it to the insurance companies to take care of them if trouble occurred.

*Held:* Clearly improper.

21. ARGUMENTS OF COUNSEL—*Reference to Success of Opposing Counsel.*—In an action for personal injuries, plaintiff's counsel spoke of his confidence in the action of the jury, even though he was "opposed by two lawyers noted for their success in defending damage suits."

*Held:* Harmless.

22. ARGUMENTS OF COUNSEL—*Personal Injury Suit—Asking Jury to Put Themselves in Place of Plaintiff.*—It is improper in an action for damages for the loss of an eye for counsel for plaintiff to ask the jury what one of them would take for the loss of an eye.

23. ARGUMENTS OF COUNSEL—*Necessity of Objection and Exception.*—Where no objection is made or exception taken to remarks of counsel, they cannot be made a ground for reversal upon appeal.

24. ARGUMENTS OF COUNSEL—*Time of Objection and Exception.*—Objection to argument of counsel, to be available on appeal, should have been made at the time the argument was made, and certainly before the verdict was rendered.

25. APPEAL AND ERROR—*Exceptions and Objections—Necessity.*—The jurisdiction of the Supreme Court of Appeals is in the main appellate, and when acting in that capacity it does not search the record to ascertain if any error may perchance have inadvertently crept into it, but it reviews the rulings and judgments of trial courts on matters brought to their attention and decided by them.

93

26. ARGUMENTS OF COUNSEL—*Retraction by Counsel.*—In an action for personal injuries, counsel for plaintiff in his opening argument stated that defendant would attempt to escape liability by the worn-out doctrine of contributory negligence, and stated that, were the accident to happen now, no such defense would be permitted. Upon objection the court directed counsel not to use that statement, and said that he seemed to have confused the contributory negligence doctrine with the fellow servant doctrine as applicable to actions against common carriers. Counsel for plaintiff said that he had done so and withdrew the statement.

*Held:* That, in view of the ruling of the trial court and the withdrawal of the remark, defendant could not have been injured.

27. ARGUMENTS OF COUNSEL—*Action for Personal Injuries—Arraignment of Class Against Class.*—In an action by a servant against his master for personal injuries, an arraignment of class against class, of labor against capital, of persons against corporations by counsel for plaintiff in his argument is highly prejudicial to the defendant.

28. ARGUMENTS OF COUNSEL—*Latitude Allowed Counsel.*—Considerable latitude must be allowed counsel in argument, and in the ordinary case the discretion and judgment of the trial court ought to be and are decisive of questions of this kind.

29. APPEAL AND ERROR—*Arguments of Counsel—Reversal.*—A judgment ought not to be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party.

30. APPEAL AND ERROR—*Arguments of Counsel—Reversal.*—There are cases where improper statements of counsel cannot be overcome by a subsequent direction to the jury to disregard them.

31. DAMAGES—*Personal Injuries—Measure of Damages.*—There is no rule of law fixing the measure of damages in personal injury cases. That is a matter to be left to the sound discretion and judgment of an impartial jury, whose verdict will not be disturbed unless it appears that they have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case.

32. DAMAGES—*Personal Injuries—Average Judgments of Other Courts.*—It would seem that the average judgments of the courts of last resort in the different States as to what sum would be a fair compensation for the loss of an eye under ordinary conditions would furnish some aid to juries and courts in ascertaining what compensation should be made therefor. Such average judgments should not be taken as a fixed ad-

measurement of the damages to be awarded in any given case, but, if there are no peculiar circumstances in the case to take it out of the general rule, it should be regarded as so far suggestive that any radical departure therefrom should cause the court to closely scrutinize the proceedings to ascertain if the jury have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case.

33. DAMAGES—*Personal Injuries—Loss of Eye—Case at Bar.*—In the instant case plaintiff was an unskilled workman about twenty-one years of age, earning $14 per week. There was no peculiar circumstances attending his case; no matter of aggravation. His sole incapacity was the loss of one eye.

   *Held:* That a verdict of $15,000 was excessive and would be reduced to $10,000.

34. REMITTITUR—*Supreme Court of Appeals—Damages for Personal Injuries.*—In an action for personal injuries the Supreme Court of Appeals having determined that no error was committed in fixing liability upon defendant for plaintiff's injury, but that the verdict was excessive, if the case were remanded to the trial court it would be solely for the purpose of assessing the damages. But when the Supreme Court of Appeals is in as good condition to do that as a jury would be, the remand is unnecessary.

35. DAMAGES—*Personal Injuries—Increase in Cost of Living.*—The increase in the cost of living is a legitimate item to be taken into account in fixing the compensation to be made for personal injuries.

Error to a judgment of the Law and Equity Court of city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Amended and affirmed.*

The opinion states the case.

*S. S. P. Patteson* and *McQuire, Riely, Bryan & Eggleston,* for the plaintiff in error.

*Hunsdon Cary,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

Bryan Clay recovered a judgment against P. Lorillard Co. Inc., for $15,000.00, for the loss of an eye, alleged to have been caused by the negligence of the company while he was in its employment as a servant. This judgment the company seeks to have reversed.

[1] Formerly a plaintiff in error stood in this court in the position of a demurrant to the evidence, but this has been changed. Now, in stating a case in this court which has been tried by a jury, it must be stated as the jury may have viewed it, remembering always that the jury are the sole judges of the weight to be given to the testimony of the witnesses, and also bearing in mind the weight attached to the verdict of a jury which has received the approval of the trial judge. Code, sec. 6365; *Roach* v. *Southern R. Co.*, 114 Va. 440, 76 S. E. 953, and cases cited.

Thus viewing the testimony, the case at bar is stated as follows: Bryan Clay was reared in the mountains of North Carolina, knew nothing whatever about machinery, and had never been employed elsewhere than on the farm on which he was reared. The P. Lorillard Co., Inc., was engaged in the manufacture of cigars in the city of Richmond, and occupied a large factory five stories high, well filled with machinery suitable for its business; the third story being used for a machine shop and the fifth, in which the injury was sustained, being used for stripping or stemming the tobacco. On this floor there were 250 machines for stripping tobacco. Clay, who was twenty years of age, entered the employment of the company as an apprentice on December 29, 1916. For about two months and a half he was employed simply to oil machinery, after that he was given other employment, but several months before the injury complained of he was put in charge of about fifty stripping machines on the fifth floor. His business here was chiefly to look after the machines under his control and keep them running, though he was directed to as-

sist any other workman on that floor who might call on him for assistance. On October 16, 1917, Edwards, a fellow workman was attempting to drill a hole in an iron or steel door frame of one of the machines and called upon Clay to sight the drill for him to see if it was perpendicular. The drill was being operated by Edwards about three feet above the floor, when Clay came up near the drill and leaned over to get his eyes on a level with the drill and attempted to hold a bushing in place with a screw driver while he sighted the drill and the hole was being drilled. The drill slipped and struck something which caused it to break, and a piece of the drill flew off and struck Clay in one eye, causing an injury which necessitated the removal of the eyeball. The drill used was a portable electric drill, weighing 27½ pounds and the bit was a quarter of an inch bit. The drill was made to carry any bit from zero up to a half inch, and there was some evidence that it was not safe to use so small a bit as a quarter of an inch in a drill of that weight, though the preponderance of the evidence was to the contrary. Other drills of lighter weight were available to Edwards but he was permitted to exercise his own judgment as to what drill to use. It was a common occurrence for bits to break, but there is no evidence that Edwards knew that fact, or that any had ever previously broken on the fifth floor where he worked, or that he had ever seen one break. He had never sighted a drill but once before and that was for his foreman on that floor, though he had seen other people sight drills. He testifies that he had never been in any other machine shop than Lorillard & Co., and had never had any other employer and that no instructions or warning was ever given him about the use of machine tools. So far as deemed necessary, other evidence in the case will be stated in the course of the opinion.

[2, 3] The injury complained of was inflicted October

18, 1917.  The declaration containing two counts was filed in August, 1918, and the plaintiff was allowed to amend his declaration by adding a third count on March 14, 1919. The amendment consisted in charging an additional ground of negligence on the part of the defendant, to-wit, that the drill was out of repair and was too heavy to use with a one-fourth inch bit, which resulted in the injury complained of.  Objection was made in several forms that the amendment stated a new cause of action which was barred by the statute of limitations.  It is very clear that the amendment does not state a new cause of action.  In the language of Whittle, J., in *Wise Terminal Co.* v. *McCormick,* 107 Va. 376, 378, 58 S. E. 584, 585, "the amended declaration merely charges the negligence complained of in a varying form to meet different phases of the evidence."  If there had been a judgment on the original declaration it could have been pleaded in bar of the ground of action set up in the amendment, and this is a sufficient test of the character of the amendment.  In *New River Min. Co.* v. *Painter,* 100 Va. 507, 42 S. E. 300, which has been consistently followed in this court, it is said:  "If the plaintiff in the amended declaration is attempting to assert rights and to enforce claims arising out of the same transaction, act, agreement or obligation, however great may be the difference in the form of liability as contained in the amended from that stated in the original declaration, it will not be regarded as for a new cause of action."  (See also, *Seal* v. *Portland Cement Co.,* 108 Va. 806, 62 S. E. 795; *Bowman* v. *First National Bank,* 115 Va. 463, 80 S. E. 95; *Standard Paint Co.* v. *Vietor,* 120 Va. 595, 91 S. E. 752; *Whalen* v. *Gordon,* 95 Fed. 305, 37 C. C. A. 70, and cases cited; *Railroad Co.* v. *Cox,* 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829, and numerous citations in Burks' Pl. & Pr. p. 402, note 14.

[4, 5]  The refusal of the trial court to permit the plea of the statute of limitations to the third count of the dec-

laration to be filed because not offered in time is also
assigned as error.   Our view of the discretion vested in
the trial court in such case is sufficiently expressed in
*Thacker* v. *Hubard,* 122 Va. 379, 94 S. E. 929, but no harm
could have come to the defendant by the rejection of its
plea because, as just pointed out, the amendment of the
declaration did not make a new case, and the cause of action
was not barred at the time the original action was insti-
tuted.

[6-10] It is assigned as error that the trial court re-
fused to order a view of the scene of the accident.   Views
are authorized by sec. 6013 of the Code (sec. 3167 Code
of 1887) "when it shall appear to the court that such view
is necessary to a just decision."   The motion for a view is
addressed to the sound discretion of the trial court and its
ruling refusing a view will not be reversed unless it ap-
pears from the record that a view was necessary to a just
decision.   In the case at bar, the record does not disclose
any such necessity.   It simply appears that the motion was
made and was overruled because "the accident happened
some eighteen months prior when conditions may have
been different."   This is far from making it "appear to
the court that such view is necessary to a just decision."
It is stated in the petition for the writ of error that its
counsel "desired the jury to have an opportunity to see this
floor and observe for themselves whether there was any
vibration with all the machinery in motion."   In other
words they were thus to take further evidence upon a sub-
ject upon which there was a conflict of testimony.   It has
been held by this court that the view of the grounds at the
scene of an accident which is the basis of an action may
better enable the jury to apply the testimony disclosed upon
the trial, but does not authorize them to base their verdict
on such view, nor to become silent witnesses to facts which
were not testified to in court.   *Kimball* v. *Friend,* 95 Va.

125, 27 S. E. 901. In *Cutchin* v. *Roanoke,* 113 Va. 452, 477, 74 S. E. 403, 409, it is said "the view of a jury, in any case, is of indeterminate probative value and should be resorted to only where there is reasonable certainty that it will give the jury substantial aid in reaching a right verdict."

In *Abernathy* v. *Emporia Mfg. Co.,* 122 Va. 406, 424, 95 S. E. 418, 423, it is said: "The question of the propriety of ordering a view lies largely in the discretion of the trial court which should only grant it when it is reasonably certain that it will be of substantial aid to the jury in reaching a correct verdict and whose decision will not be reversed unless the record shows that a view was necessary to a just decision."

In *Scott* v. *Doughty,* 124 Va. 358, 368, 97 S. E. 802, 805, it is said: "The trial court refused to grant the view because it was of the opinion that the jury could not ascertain 'ordinary' low water mark by one view; and also the result, if not the express object, of the view would be to supply evidence rather than to apprehend it. There was no error in this ruling. It was a matter resting in the sound discretion of the trial court and in this case the discretion was well exercised."

In 1 Greenleaf on Ev. (16th ed. by Wigmore) pp. 33-4, it is said: "While, as already pointed out, autoptic preference is to be distinguished from evidence both testimonial and circumstantial in the strict sense of the word it is at any rate an additional source of belief or proof over and above the statements of witnesses and the circumstantial evidence. Its significance in this respect has often been discussed by courts in ruling upon instructions as to the nature of jury-views; and in spite of some opposing precedents the generally accepted and the correct doctrine is that a view furnishes a distinctly additional source of proof, *i. e.,* the thing itself as autoptically observed."

We have reviewed most of our recent decisions on the subject of views by the jury, and, while there is some variation in the language used in the different cases, we are content to rest our conclusion on the statement that the propriety of ordering a view lies largely in the discretion of the trial court, which should only grant it when it is reasonably certain that it will be of substantial aid to the jury in reaching a correct verdict, and that its decision refusing a view will not be reversed unless the record shows that it did appear to the trial court that such view was necessary to a just decision, and that the statutory provision for expenses in a civil case were complied with. Code, sec. 6013. We do not wish to restrict views to cases where they will aid the jury in applying the testimony adduced on the trial. There are cases where a view will furnish "a distinctly additional source of proof, *i. e.*, the thing itself as autoptically observed." In such case the view should be granted, as it would be "of substantial aid to the jury in reaching a correct verdict." *Abernathy* v. *Emporia Mfg. Co., supra.* In the case at bar, however, the view was rightly refused for the reasons stated by the trial judge, especially in view of the absence of any evidence that conditions were the same when the view was asked as when the accident happened. See discussion and citations in Burks' Pl. & Pr. sec. 313.

[11-13] The trial court granted seven instructions on the motion of the plaintiff and fourteen on the motion of the defendant. It also modified two of the instructions tendered by the defendant and gave them as modified, and refused to give several other instructions tendered by the defendant, and the several rulings on instructions adverse to the defendant are made the grounds of exception. The instructions given seem to cover every phase of the case presented by the evidence that the ingenuity of able counsel could suggest, and are at least as favorable to the defendant as it

94

had the right to demand. The defendant objected to instructions A. B. C. and E. given for the plaintiff. The form of the assignment of error in the petition is as follows: "Petitioner submits that the evidence in this case did not justify the instructions hereinafter enumerated and granted at the request of the plaintiff, which are not quoted at length, since they would greatly extend this petition. The evidence has been so fully discussed that petitioner deems it unnecessary to discuss it again under each instruction. Those referred to are the following: Instruction A latter part, Instruction B latter part, Instruction C latter part, Instruction E latter part." These instructions are lengthly and only one of them contains a period, and it is not entirely clear what is intended to be embraced by the designation of "latter part," and objection is made to the assignment on the ground that it is not sufficiently specific. If we should answer this assignment of error by saying that the evidence does justify the instructions, the answer would be as unsatisfactory as the assignment. The counsel for the defendant in error took sixteen pages of his brief in an effort to anticipate and answer the objections he supposed the plaintiff in error intended to make to the instructions referred to. In the reply brief, the plaintiff in error pointed out in two pages the objections relied on. If this had been done in the petition it would have been a sufficient assignment, and would have saved much time and labor. It is not sufficient to say of an instruction simply that the latter part of it is not justified by the evidence, and to make the same objection in gross to four lengthy instructions aggravates the difficulty. To say that the "evidence in this case did not justify the instructions" is an admission that there was evidence in the cause upon which the trial court based its instructions, but a denial of its sufficiency. The petition should have set out the evidence and pointed out wherein it was insufficient as a basis for the instructions. This

court will not undertake that burden. The fact that the greater part of the evidence had already been discussed in the petition in another connection does not relieve the petitioner from the necessity of showing that there is not sufficient evidence to support the instructions. This court cannot declare that the evidence did not justify the instructions without first ascertaining and weighing all the evidence constituting the basis for the instructions, and, as the petitioner is making the charge of insufficiency, it is incumbent on him to set out the evidence and point out its insufficiency. In *Washington So. Ry.* v. *Cheshire,* 109 Va. 741, 65 S. E. 27, it was held that "a statement in a petition for a writ of error that 'without discussing in detail the instructions asked for and refused by the court, it is submitted that they expressed correctly the several propositions stated in them, and, that there was evidence supporting or tending to support them' is not a sufficient assignment of error either under section 3464 of the Code or rule 2 of this court. A petition for a writ of error is in the nature of a pleading, and must state clearly and distinctly the errors relied on to reverse the judgment." See also, *Worley* v. *Mathieson Alkali Works,* 119 Va. 862, 89 S. E. 880. See also, *Rust* v. *Reid,* 124 Va. 1, 97 S. E. 324. This court will not, as a rule notice assignments of error made for the first time in the reply brief of the plaintiff in error, as it is not a compliance with the statute on the subject and is not fair to the defendant in error. *Sands* v. *Stagg,* 105 Va. 444, 452, 52 S. E. 633, 54 S. E. 21, and cases cited. This subject is examined at some length by Judge Keith in *Bank* v. *Trigg Co.,* 106 Va. 327, 56 S. E. 158, and he lays stress on the language of Chancellor Spencer in *Wilkes* v. *Rogers,* 6 Johns (N. Y.) 566, that the party complaining must "lay his finger on the error." He says further that exceptions to commissioners' reports and assignments of error in petitions for appeal "depend in great degree upon the same

principles," and the former have been frequently likened to special demurrers.    He also makes the following quotation from *Clements* v. *Hearne*, 45 Texas, 415:    "To require the appellee or the court to hunt through the record for every conceivable error which the court below may have committed, when none has been pointed out by the party complaining of the judgment, would obviously be unreasonable and oppressive on a party recovering judgment, and most burdensome of this court, unnecessarily impeding the progress of its business; and, by the confusion and uncertainty which it would beget as to questions on which the case was decided in the court below, destroy its character as an appellate tribunal; and by the multiplicity of the questions for discussion tend much more to confusion and error in its own decisions than the correction of errors which may in fact have occurred in the district court."

[14] It is equally true that an assignment of error in general terms, where the petitioner does not "lay his finger on the error" or which requires the appellee or the court to hunt through the record from beginning to end to ascertain what the evidence is that the plaintiff in error deems insufficient to support an instruction, when the plaintiff in error could easily put his finger on it, places a burden upon the court that it ought not to be expected to bear. We had just that experience with the case at bar until we looked to the reply brief.   The latter, of course, counsel for the defendant in error did not have while preparing his brief.   We are of opinion, therefore, that the errors, if any, in the instructions A B C and E, given at the instance of the plaintiff below, are not sufficiently assigned.

[15] Instruction No. 1 tendered by the defendant was as follows:

"The court instructs the jury that it is their duty to try this case without being influenced by sympathy or the mere fact that the plaintiff was injured.   The jury are under a

solemn obligation to try the case according to the law and the facts, and unless there is proof of negligence on the part of the defendant and no proof of contributory negligence on the part of the plaintiff, or of negligence on the part of a fellow-servant such as would relieve the defendant of liability, as pointed out in other instructions, the plaintiff is not entitled to recover and they must find for the defendant."

There was no error in refusing this instruction as it was covered by the oath of the jurors, and could not have been in any way helpful to them in arriving at a correct verdict.

[16, 17] There was no error in refusing instruction A-2 tendered by the defendant. That instruction was as follows:

"The court instructs the jury that there can be no recovery in this case on the ground that the drill described in the evidence was too heavy for the work on which it was being used or that it was out of repair."

There was not only evidence tending to show that the drill was too heavy, for the work on which it was used, but in addition thereto the defendant's view of that question was fully covered by instructions I and L given at its instance. For similar reasons there was no error in refusing to give defendant's instruction B-2. The error, if any, in refusing instruction No. 8 tendered by the defendant is not sufficiently assigned. The language of the assignment of error in the petition is, "The petitioner submits that this instruction should have been given." This court will not search the record for errors not pointed out in the petition. The court did not err in refusing instructions 12 and 12 C tendered by the defendant as the subjects embraced therein were adequately covered by instructions L O and R given at the instance of the defendant. Instruction 12 B tendered by the defendant was slightly modified and as modified given as instruction R. We find no error in the modification.

[18, 19] In view of the many instructions tendered in this case, twenty-one of which were given, it seems proper to repeat what was said on the subject in *DuPont* v. *Snead,* 124 Va. 177, 187, 97 S. E. 812, 815:

"The facts of this case are not complicated, and a few simple instructions would have been all that was necessary to have enabled the jury to have intelligently applied the law, and yet the number of instructions offered resulted in requiring the trial court to pass on twenty-five instructions. It is sufficient in all cases for a trial court to give such instructions as are necessary or proper to enable the jury to arrive at a correct verdict, after considering the evidence in all of its phases. After so instructing them it may reject all other instructions tendered as it is never error to refuse an instruction upon any point upon which the jury has already been sufficiently instructed," citing *Richmond* v. *McCormack,* 120 Va. 552, 91 S. E. 767, and cases cited.

"If the instructions given are founded upon the evidence, correctly state the law, and fully cover the case, it is immaterial whether they were prepared by counsel or by the court, and all other instructions may be refused."

[20-22] The last two assignments of error are the failure of the trial court to set aside the verdict of the jury because the remarks of counsel prejudiced the jury against the defendant, and because the verdict was excessive. The defendant company claims that the amount of the verdict is evidence that the jury was actuated by prejudice against it. The two assignments are so intimately associated that they will be treated together. The statements of counsel objected to and the rulings of the trial court thereon are set forth in bill of exceptions No. 9, as follows:

1. "In his opening statement counsel for the plaintiff told the jury that the defendant would attempt to escape liability by the wornout doctrine of contributory negligence, and as to the defense of contributory negligence he stated

that were the accident to happen now, no such defense
would be permitted. Counsel for defendant objected, and
the court directed counsel for plaintiff not to use that
statement, and said that, in any event, he seemed to have
confused the contributory negligence doctrine with the fel-
low-servant doctrine as applicable to actions against com-
mon carriers. Counsel for plaintiff said that he had done
so, and withdrew the statements made.

"In his argument his counsel stated that plaintiff had
never used a drill at all, and that his duties at the time
of the accident were merely to get tags from nails where
operators had hung them showing that a machine was out
of order, inspect the machine, and report the trouble to the
foreman. No exception was taken to this language by
counsel for defendant.

2. "In his closing argument to the jury, when discussing
the use of one portable drill for various sizes of bits, plain-
tiff's counsel stated that it was more economical to do this,
hence employers did not buy separate drills for different
sizes of bits. He said that machines were more expensive
than flesh and blood, that men could always be gotten, but
that it cost money to buy new machines; and said that
if the jury allowed his client to go from the court room
without compensation, they would be guilty of the char-
acter of act which is bringing on anarchy in this country.
Counsel for defendant objected and the court sustained the
objection and said that counsel should not be drawing com-
parisons to array capital against labor, and directed the
jury not to consider what counsel had said. There was
no withdrawal of the remarks made by counsel for the
plaintiff.

3. "In his closing argument to the jury, when discussing
the attitude of employers and the economy they exercised
in turning out their product, counsel for plaintiff said that
the employers were willing to go ahead and take chances

and leave it to the insurance companies to take care of
them if trouble occurred. No objection was made at the
time, and counsel for plaintiff did not modify his remarks.

4. "In his argument counsel for plaintiff spoke of his
confidence in the action of the jury, even though he was
'opposed by two lawyers, noted for their success, in de-
fending damage suits.' No exception to this language was
taken by counsel for defendant.

5. "In his closing argument, counsel for plaintiff stated
that his client had been cut down in his young manhood,
and asked the members of the jury what one of them would
take for the loss of an eye. He referred to the loss to his
client and his mental anguish, and quoted certain language
which he said had been used by Judge Riely of the Supreme
Court of Appeals of Virginia in an opinion, to the effect that
there was no adequate way to compensate in damages for
the physical sufferings of a human being. When this state-
ment was made to the jury counsel for the defendant made
no objection to the court."

It will be observed that no objection was made or ex-
ception taken to the last three statements of counsel until
after the verdict, and then only retrospectively as indicat-
ing that the verdict was the result of prejudice induced
by the improper argument of counsel. Statement No. 3
referring to insurance companies, taking care of employes
if trouble occurred was clearly improper and should not
have been made. Statement No. 4, as to the success of
opposing counsel in defending damage suits was harmless.
Statement No. 5 was improper in asking members of the
jury what one of them would take for the loss of an eye.
In the recent case of *Keathley* v. *Ches. & O. R. Co.* (W.
Va.), 102 S. E. 244, 249, the following remarks of counsel
were said to be manifestly improper:

"You, gentlemen of the jury, put yourselves in the place
of the plaintiff, in estimating damages; take into consid-

eration what amount, under such circumstances, would compensate you if you were a young man in the bloom of health, with your wife, about to start on the sea of life."

[23, 24] But it will be observed that no objection was made or exception taken to remarks above numbered 3, 4 and 5. They cannot, therefore, be made a ground of reversal in this court. It would be unfair to opposing counsel and to the trial courts to permit it. Remarks are sometimes made by counsel in the heat of debate which they would readily retract if brought to their attention, and which certainly would be corrected by the trial court if brought to its attention. Trial courts are not expected to be alert to discover every remark of counsel that may in any way be prejudicial to the opposing party, and if no objection is made to such remarks it is deemed to be waived. The objection, to be available in this court, should have been made at the time the argument was made, and certainly before the verdict was rendered. In *Williams* v. *Commonwealth*, 111 Va. 870, 69 S. E. 1031, it was said that "the correct practice is to give notice that a point is intended to be saved at the time the alleged objectionable ruling is made, certainly before verdict, and the bills of exception are usually prepared and signed later." In *Wickham* v. *Turpin*, 112 Va. 236, 70 S. E. 514, no motion was made to disregard language of counsel and no exception was taken thereto until nine days after the verdict, when, for the first time, it was made the ground of a motion for a new trial, and the court held that such an objection came too late after verdict.

[25] The jurisdiction of this court is in the main appellate, and when acting in that capacity it does not search the record to ascertain if any error may perchance have inadvertently crept into it, but it reviews the rulings and judgments of trial courts on matters brought to their attention and decided by them. As is well said by the Su-

95

preme Court of Alabama in speaking of an objection to argument of counsel:

"Nothing that the court, ruled, said or did was presented for revision, and the functions of this court in its appellate character are strictly confined to the action of trial courts upon questions which are presented to and ruled upon by them. If the statement complained of was improper, of which we are by no means convinced, the presumption is, that it would have been excluded and the jury duly cautioned against being influenced by it, had the attention of the trial judge been called to it and his action invoked upon it; and we cannot put him in error for failure to rule on a matter which has never been presented for his decision, or decided by him." *Lunsford* v. *Dietrich*, 93 Ala. 565, 572, 9 So. 308, 311, 30 Am. St. Rep. 79, 86.

[26] In view of the ruling of the trial court and the withdrawal of the remarks by counsel for the plaintiff, the defendant could not have been injured by the remarks of counsel contained in paragraph No. 1.

[27] The remarks of counsel for the plaintiff in paragraph No. 2 were highly prejudicial to the defendant and were not withdrawn. They were an arraignment of class against class, of labor against capital, of persons against corporations, and their tendency was prejudicial to the defendant. The trial court sought to eradicate their effect by saying "that counsel should not be drawing comparisons to array capital against labor, and directed the jury not to consider what counsel had said," but the bill of exceptions continues, "there was no withdrawal of the remarks made by counsel for plaintiff." Counsel for the defendant insist the wrong done was not righted, nor the poison given eradicated, by the action of the court, as is manifested by the excessive amount of the verdict, and we are asked to take a retrospective view of all of the remarks of counsel, both those that were and those that were not excepted to,

so as to see the atmosphere created by them surrounding the jury at the time they rendered their verdict.

[28-30]   It is true that "considerable latitude must be allowed counsel in argument, and in the ordinary case the discretion and judgment of the trial court ought to be and are decisive of questions of this kind" (*Sands & Co.* v. *Norvell*, 126 Va. 384, 101 S. E. 569, 576), and that "a judgment ought not to be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party," (*Wash. & O. D. Co.* v. *Ward,* 119 Va. 334, 339, 89 S. E. 140, 142), but it is also true that "there are cases in which the error of admitting improper testimony, or the effects of the mere statements of counsel, cannot be adequately overcome by a subsequent direction to the jury to disregard the objectionable evidence or statements." *Wash. & O. D. Co.* v. *Ward, supra.* In *Norfolk & W. R. Co.* v. *Allen,* 122 Va. 603, 618, 95 S. E. 406, 410, the opinion of the court concludes, "On account of the improper remarks by counsel for the plaintiff in addressing the jury, the verdict will be set aside."

[31, 32]   We must consider then whether the amount of the verdict was such as to indicate that the jury were probably improperly influenced by the remarks of counsel. We have repeatedly held that there is no rule of law fixing the measure of damages in cases of this kind, but that is a matter to be left to the sound discretion and judgment of an impartial jury whose verdict will not be disturbed unless it appears that they have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. *E. I. DuPont Co.* v. *Taylor,* 124 Va. 750, 762, 98 S. E. 866, and cases cited. The opinions of jurors, however, differ widely as to amount of damages to be allowed in such cases. A rich man would

not undergo serious physical pain for any amount of money, and would probably vote for large damages, whereas a poor man would probably put a much higher value on money and would vote for a smaller sum. The temperament of men also, and other considerations, lead them to vote for larger or smaller damages. So likewise the facts of one case may warrant a different verdict from the facts of another. The attendant suffering or the subsequent incapacity to follow one's usual calling may be different in one case from what they are in another. But where the facts in a number of cases are substantially the same, the compensation to be made therefor ought not to be left wholly indeterminate, or wholly dependent on the verdict of the jury in a particular case, if any means can be discovered by which the amount of the compensation can be reasonably approximated. It would seem that the average judgments of the courts of last resort in the different States as to what sum would be a fair compensation for the loss of an eye under ordinary conditions would furnish some aid to juries and courts in ascertaining what compensation should be made therefor. Such average judgments should not be taken as a fixed admeasurement of the damages to be awarded in any given case, but, if there are no peculiar circumstances in the case to take it out of the general rule, it should be regarded as so far suggestive that any radical departure therefrom should cause the court to closely scrutinize the proceedings to ascertain if the jury have been influenced by partiality or prejudice, or have been mislead by some mistaken view of the merits of the case. As said in *Ches. & O. R. Co.* v. *Arrington*, 126 Va. 194, 101 S. E. 415, 423: "While each case must be determined by its own facts, it is nevertheless true that the verdicts of other juries which have been approved by the courts, represent the common or average judgment of mankind as to the proper recovery in such cases." See also, *Standard Oil Co.* v. *Tierney,*

92. Ky. 367, 17 S. W. 1026, 36 Am. St. Rep. 595; Text and cases cited, 8 R. C. L., sec. 217.    The adoption of this average judgment to the extent indicated is simply following precedent.    *Central of Ga.* v. *White,* 175 Ala. 60, 56 So. 574; *Reems* v. *New Orleans & R. Co.,* 126 La. 511, 52 So. 681; *Maloney* v. *Winston Bros. Co.,* 18 Idaho 740, 111 Pac. 1080, 47 L. R. A. (N. S.) 634, where a verdict for $15,000 was reduced to $10,000.

In a note in L. R. A. 1915F, at page 496, there are given eighteen verdicts for the loss of one eye, which have met the approval of the appellate courts of the States in which they were rendered.    They range from $15,000 to $1,400. One of them is for $15,000, one for $11,000 and one for $10,000.    The residue are for smaller sums, and the average of the whole is $5,424.    These cases come from ten different States, to-wit: Illinois, Indiana, Iowa, Michigan, Minnesota, Missouri, Nebraska, Ohio, Oklahoma and Texas. Similar, though smaller, collections of cases and embracing chiefly the cases already referred to may be found in 16 Ann. Cas. 39, and 26 Ann. Cas. 1913A, 1363.    A collection is also given in 17 Corpus Juris 1116, but in all of these collections the average amount awarded for the loss of one eye is less than the average first above stated.    From the same note in L. R. A. 1915F, it will appear that verdicts were deemed excessive, and were reduced as follows:

A verdict of $8,000 in a Texas case, *De La Vergne & Co.* v *Stahl,* 24 Tex. Civ. App. 471, 60 S. W. 319, was considered excessive and reduced by $1,000.

A verdict of $15,000.00, in favor of a laborer who had been earning $1.60 per day, and whose earning capacity was cut down to $15.00 or $20.00 per month, was reduced to $10,000.00.    *Ribich* v. *Lake Superior Smelting Co.,* 123 Mich. 401, 82 N. W. 279, 48 L. R. A. 649, 81 Am. St. Rep. 215.

A verdict of $12,821.00 in favor of a railroad fireman,

nineteen years of age, who lost one eye, had his jaw fractured, and was otherwise severely injured, was reduced to $7,500.00. *Haynes* v. *Maine Cent. R. Co.*, 108 Me. 243, 80 Atl. 39.

A verdict of $12,000.00, for a stenographer and bookkeeper, was held excessive and reduced to $6,000.00. *Olwell* v. *Skobis*, 126 Wis. 308, 105 N. W. 777.

So a verdict of $10,000.00, for a girl, the operator of a machine, was reduced to $6,000.00. *Western Electric, etc.* v. *Prochaska*, 129 Ill. App. 589.

In *Heddles* v. *Chicago, etc., R. Co.*, 74 Wis. 239, 42 N. W. 237, where the injury resulted in the amputation of both legs of the plaintiff, a verdict for $30,000.00 was set aside, and the court said: "No rational being would change places with the injured man for an amount of gold that would fill the room of the court, yet no lawyer would contend that such is the legal measure of damages. Courts and juries must deal with such questions in a deliberate and practical sense."

*Chicago, etc., R. Co.* v. *DeVore*, 43 Okla. 534, 143 Pac. 864, L. R. A. 1915F, 21, is the only case we have found in which a verdict for $15,000 for the loss of one eye was approved. In that case the plaintiff was a man thirty-four years old, and physically strong, and had worked his way up to the position of engineer in the railroad service, and had prepared himself and selected this for his life's work. He was receiving from $125 to $130 per month, and his injury reduced his earning capacity to $65.00 per month, and disqualified him from ever holding the position of engineer with any railroad company, and there was nothing in the record to indicate that the jury was influenced by passion or prejudice.

In *Libby, McNeil & Libby* v. *Banks*, 209 Ill. 109, 70 N. E. 599, the verdict was for only $7,000, although the plaintiff not only lost one eye, but was incapacitated to do work of any kind.

In *Central of Ga.* v. *White, supra,* it was held that where the verdict of the jury for a personal injury is largely above or greatly below the average, it is fair to infer, unless the case presents extraordinary features, that partiality, prejudice, or other improper motive has led the jury astray.

[33]  In the case at bar, the plaintiff was an unskilled workman, about twenty-one years of age, earning $14.00 per week.  There were no peculiar circumstances attending his case, no matter of aggravation.  His eye was seriously injured and the ball had been removed and he had completely recovered.  He had returned to his old job at $4.00 per week increase in his wages, but had given it up because of apprehension of injury to his other eye, in which event he would be blind.  His sole incapacity was the loss of one eye.  The amount of the verdict placed at six per cent. interest would yield him $75.00 per month perpetually, and leave him with the principal intact at the time of his death. The verdict was for nearly three times the amount of the average verdict in similar cases in other States.  Under the facts and circumstances of the case, we are forced to the conclusion that the amount of the verdict is excessive, and, in the absence of anything else in the record to account for the excess, that in spite of the direction of the trial court, the remarks of counsel so influenced the jury that they did not exercise that cold, deliberate and impartial judgment so essential to a fair trial of the merits of the case, and which should characterize all verdicts rendered in a court of justice.

[34, 35]  We are of opinion that, had the remarks of counsel been unobjectionable, a verdict for the plaintiff for a proper amount could not have been set aside on the ground that it was without evidence to support it, or was plainly contrary to the evidence; but we are further of opinion that the verdict is plainly excessive in amount.  Having

determined that no error was committed in fixing liability upon the defendant for the plaintiff's injury, if the case were remanded to the trial court it would be solely for the purpose of assessing the damages. Code, sec. 6365. But this court is in as good condition to do that as a jury would be, and where that is the case it is unnecessary to remand. *McIntyre* v. *Smyth*, 108 Va. 736, 62 S. E. 930. While we have seen that the average verdict in such cases was only $5,425, yet many of these cases were decided some years ago, and the cost of living has greatly increased in the last few years. In many respects it has more than doubled. This increase is a legitimate item to be taken into account in fixing the compensation to be made for personal injuries. *Dole* v. *New Orleans Light Co.*, 121 La. 945, 46 So. 929, 19 L. R. A. (N. S.) 623; *Rogers* v. *Lumber Co.*, 129 La. 900, 57 So. 166, and cases cited; *Canfield* v. *Chicago & H. Co.*, 142 Ia. 658, 121 N. W. 186: Note Ann. Cas. 1913A, p. 1363. In view of the average amount heretofore allowed in such cases, and of the recent great increase in the cost of living, the court is of opinion that $10,000 would be a fair and just compensation to the plaintiff for the injury sustained by him, and it will accordingly enter an order that the judgment of the Law and Equity Court of the city of Richmond be amended by entering a credit thereon for the sum of $5,000 as of its date, and, as thus amended, the said judgment will be affirmed, but with costs to the plaintiff in error in this court as the party substantially prevailing.

*Amended and affirmed.*